## LUCICH *et al.*, LEGATEES, APPELLANTS, *v.* MARCO MEDIN *et al.*, RESPONDENTS.

Although the same Court has jurisdiction, under our system, of cases at law, in equity and in matters of probate, yet the several classes of cases must be kept separate, and a petition to the Court of Probate cannot be confounded with an action at law or a suit in Chancery.

This is a petition to the Probate Court, and if treated as a bill in equity there would be a fatal objection to it. To wit: that it was a bill filed to surcharge and falsify the accounts of an executor who had not yet made a final settlement.

An error in the names of the petitioners in a case in probate pending and undetermined, may be corrected. It is not such a fatal error as would be the bringing of a suit in the name of the wrong parties.

Waste, negligence and mismanagement afford as good grounds for the removal of an executor, as actual fraud.

If an executor qualify as such, and totally neglect his duties, he should be removed, although he has committed no positive act of wrong.

An executor who takes charge of an estate which is not in debt a dollar, except for the last sickness of the testator—which only lasted fifteen days—with cash assets on hand to the amount of $4,300, and a monthly rental of $500, and runs that estate behind to the extent of $1,800, in nineteen months, is *prima facie* unfit for the trust he is exercising.

An executor may employ counsel to attend to the litigation concerning the estate. But he has no right to employ counsel at the expense of the estate to keep the accounts and do that business for which he is compensated by his fees. If he is too ignorant to keep his own accounts, he must employ some one else to do it for him, and pay for the same out of his own per centage, which he is allowed for settling the estate.

Sec. 239 of the Probate Act seems to provide that what is settled at one settlement of an executor's account shall not be open to resettlement at any future time in the Probate Court.

The rule that a Probate Court cannot reinquire into that which has once been settled, only applies to those items of account which were properly before the Court for adjustment. The general result at which the Probate Court arrives is immaterial. It is only as to the items of account acted on that the doctrine of *res adjudicata* applies.

It has been held, a mistake in a former settlement may be corrected in a subsequent one. The only difficulty in applying this rule is, to determine what shall be treated as a mistake, and what shall stand as *res adjudicata*. Perhaps the best rule is to say, everything may be corrected which shows on its face the mistake, or error. This would allow the Court, before final settlement, to correct its own errors of judgment, but not to go *de novo* into proof of items already passed on.

Where an executor files an account showing a certain balance for or against an estate, but never settles the same; then files a second account, beginning with

Lucich *v.* Medin.

the balance drawn from the first, and there is a regular hearing and settlement of this second account; this can be held *res adjudicata* only as to the items of the second account, (other than the balance with which it commences) and all the items of the first account are open to investigation.

Under the 203d Section of the Probate Act, an executor may pay money to compromise a suit pending against an estate. But he cannot lawfully make such payment without the previous consent of the Probate Court.

When a party who is executor of the estate of a deceased cotenant in common, pays money to compromise a suit about the common property without consulting the Probate Court, he will be held to have paid as a cotenant, and not as executor.

In such case, the heirs of the deceased cotenant will be allowed the option to approve the compromise and contribute their share of the money paid on the compromise, or reject the same and depend on the testator's former title.

An executor cannot borrow money to speculate for an estate, unless specially authorized by the will to do so.

An executor having stock on hand liable to assessment, should either get an order of the Probate Court to sell it, or else, if the estate is surely solvent without the stock, turn it over to the legatees. He should not borrow money to pay the assessments.

On REHEARING: *Held*, a Probate Court may correct its own errors in the settlement of estates, either in regard to matters of law or fact, at any time before final settlement, provided such corrections can be made from the record without opening the proof in the case.

What appears on the face of an account and interlocutory decree to have been once settled must remain closed, unless the record itself discloses some error.

Passing an account with a certain item as a credit thereon in favor of the estate, would not preclude proof in a subsequent settlement of another item of credit in favor of the estate which was not on the first account. Nor would a general entry in favor of the estate of so much money received from rents, preclude those interested in the estate from showing that other money was on hand besides that reported. Nor that the several sums received for rent would amount to a greater sum than that entered. The account of an executor or administrator must show the items of account, and not merely the general result of certain transactions.

An executor who came into possession of an estate in his fiduciary capacity, cannot buy up an adverse title to the estate, and withhold the rents on his mere *ipse dixit* that the title he has bought up is superior to that of his testator.

APPEAL from the District Court of the First Judicial District Court, Hon. RICHARD RISING, presiding.

The facts of the case are stated in the opinion.

*C. E. DeLong* and *W. H. Rhodes*, for Appellants.

The principal argument on the part of appellants was directed to

a review of the testimony, with a view of showing the alleged fraud.

The following extracts from their brief will show some of the more important legal positions contended for:

" The petition containing all the elements of a bill in Chancery, and stating facts sufficient to constitute a cause of action, and the defendant having appeared and answered, the question arises: Has a Court of Chancery the inherent jurisdiction to retain a bill for the purpose of annulling and setting aside the settlement of an executor's account, on the ground of fraud and mistake ?

" Were this *res integra*, an argument might be made sufficiently plausible against it. But the question has been settled in the affirmative for too many years to be disturbed.

" In North on Probate Courts, note to page 176, the whole question is thoroughly reviewed, and the conclusions thus summed up by that Judge : ' It is not competent for the Probate Court to decide that any account is so far final as to bar all further inquiry in regard to matter not included in the account already settled, and to oust the Court of jurisdiction. (*Field* v. *Hitchcock*, 14 Pick. 405; *Stearns* v. *Stearns*, 1 Pick. 157.)

" ' And if, at any time before final settlement of an administrator's account, any manifest mistake should occur, it is competent for the Judge of Probate, on proof, to correct it in subsequent accounts presented by the administrator.

" ' The accounts settled by an executor or administrator, in a Court of the proper jurisdiction, are *prima facie* evidence in his favor, and can be impeached for error or fraud only.

" ' This is a general rule, and has been recognized and settled in most Courts having cognizance of testamentary matters in the United States.' ' Citing the following cases :' (*Smith* v. *Hurd*, 7 Howard Miss. 188 ; *Allen* v. *Clark*, 2 Blackf. 343 ; *Turner* v. *Williams*, 7 Yerg. 172 ; *Owens* v. *Collinson*, 3 Gill and J. 25 ; *McCullough* v. *Montgomery*, 7 Serg. Raw. 31.) He proceeds : ' A final account, however, has no conclusive effect of a judicial sentence, between the administrator and the distributees, and does not bar them from proceeding to *falsify* and surcharge it on the ground of *error* and *fraud*,' " citing *Vestner* v. *McMurran*, 1

Freeman Ch. Rep. 149 ; *Pratt* v. *Northam*, 5 Mason, 95.     See also, *Turner* v. *Williams*, 7 Yerg. 172.

In Dayton on Surrogates, 543, speaking " of the effect of final settlement," he says :   " With regard to infants who did not duly appear, or were not legally represented on the accounting, it was before suggested that their rights were not, in any way, affected by the proceedings.     But the point remains to be decided.     As to those persons under disabilities, *bound only by publication*, it is probable that the executor or administrator will always continue liable for their claims until they shall be barred by reason of staleness, or the application of the rules prescribing the limitations of actions. (See *Ellet* v. *Rathbun*, 4 Paige, 102.)

Now it is to be observed that there is no pretense that a personal service was made on any of the heirs.     They were summoned only by publication, and so the record itself shows.     Now the bill alleges fraud and error in the settlement, and the evidence shows it.     Can any Court legalize fraud ?     Has not Chancery inherent and inalienable jurisdiction to correct errors or mistakes, and to set aside, uproot and relieve against fraud ?     The statement of the proposition suggests the answer.

Has an  executor a right to contract for stipulated interest for any purpose ?     The intestate himself could not do it except by an agreement in writing, yet here the executor attempts to charge it on a verbal contract.     But the pretexts of borrowing these sums are such that the law will not tolerate.     The stock ought to have been sold.     How can an executor create a new debt against the estate ? The second sum, even if  borrowed at all, which is extremely doubtful, cannot be charged against the estate for two reasons :

*First.*     The estate has never received any benefit, the title still being in Medin.     The record shows that he has never made a deed to the heirs of the interest he pretends to have purchased from La Page *et als*.

*Secondly.*     Because the claim against the property was never presented by the litigants to the executor as required by Sec. 140 of the Estates Act.     (1 Nev. St. 208.)     And the law does not give the executor the right to compromise, except by order of the Court.     (See Sec. 144, Ib. 209.)

Dayton on Surrogates, 534, says : "A charge of interest by an administrator will be viewed, however, with caution, and the circumstances offered to sustain it *will be examined with scrupulous care.*"    We refer the Court, also, to the recent case of *Tompkins, administrator,* v. *Weeks et al.,* reported in 26 Cal. 50.

*Williams & Bixler* for Respondents.

A decree of a Probate Court settling an account is conclusive, and can only be overturned by appealing to a higher Court, or by bill in equity attacking it for fraud or mistake.    Once passed on by the Probate Court, that Court cannot review its own decision. (Stat. of 1861, p. 225, Sec. 239 ; *Mercen* v. *The People et al.,* 25 Wend. 96–7 ; *Conor* v. *Mayor, etc.,* 25 Barb. S. C. 513 ; *Thompson* v. *Harwood,* 1 Ed. Chancery R. 501–2–3 ; *Sandford* v. *Head,* 5 Cal. 298 ; 8 B. Monroe, 507.)

A decree correcting mistakes in an account not final, will not be made because the Probate Court may, in its final account, correct such mistakes.    (*Stearns* v. *Stearns,* 1 Pick. 157.)

This is not a proceeding in equity, and Medin did not waive his objection to the form of proceeding.    A party may appear for the purpose of objecting to the form of a proceeding, and if the objection is overruled, may defend upon the merits .without waiving his objection (*Deidesheimer* v. *Brown,* 8 Cal. 339 ; *Avery* v. *Slack,* 17 Wend. 86.)

Supposing this case be treated as a bill in equity, let us examine its sufficiency.    Having relied solely upon charges of fraud to obtain the relief sought, we presume that the Court will agree with us without requiring a citation of authority or argument, that it devolves upon the complainant to establish clearly their charges, and that all intendments and presumptions are in favor of the defendant.    It is not sufficient for them to raise a doubt whether the defendant has acted fairly in his dealings with the estate, but they must satisfy the Court that he has not.

The rest of respondent's brief is devoted to an examination of the particular charges of fraud, and the testimony bearing on them.

Opinion by BEATTY, C. J., LEWIS, J., concurring.

In this case, a petition was filed by Luca Jancovich and Dodato Milinovich against Marco Medin and Vincent Milatovich, executors of Marco Milinovich, deceased. The petition is headed, "In the matter of the estate of Marco Milinovich, deceased." In a subsequent stage of the proceedings, by leave of the Court, the names of both these petitioners were struck out from the title of the petition, and the following names were inserted in lieu thereof: "Andreane Lucich, Andrew Milinovich, Bogdan Milinovich and children of Marietta Barbarovich, deceased, John and Andreane Barbarovich, legatees."

The petition shows that Marco Milinovich died at Virginia City on the fifteenth day of July, 1863, leaving Março Medin and Vincent Milatovich his executors, who subsequently qualified as such. It further shows that Andreane Lucich and the others who were substituted with her as petitioners were the residuary legatees of decedent's estate, both real and personal. The petition further shows that all the residuary legatees are foreigners, not residing in the United States, and that the original petitioners were the agents or attorneys of the legatees. The petition then alleges that the executors never filed a joint inventory, but that Medin only filed a separate inventory on the —— day of ——, 1863, showing property to amount of about $27,857.50. The other executor never filed any. Letters testamentary were issued to Medin in 1863, and to Milatovich about the first of July, 1864. No joint accounting has ever been had by said executors with the estate.

It is further charged that Medin's inventory was not correct, true, or complete. It charges him with fraudulent suppression and concealment of certain property. It charges him with fraud in a settlement made with the Probate Court in February, 1865. It sets out many particulars in which the settlement is fraudulent, and winds up with the following prayer :

" Wherefore, the premises considered, your petitioners respectfully pray that the said executor be cited to appear and show cause why he shall not be compelled to file a further inventory of the property of said estate, and to show cause why the settlement of

said accounts above referred to should not be set aside, annulled, and revoked. Your petitioners further pray the Court that said executor be immediately ordered to file *de novo* full, true, and correct accounts of all property of said estate—real, personal, and mixed—which has come to his knowledge or possession; of all moneys received or paid out in behalf of said estate; and that he be ordered to bring into Court proper and satisfactory vouchers for all sums disbursed; and your petitioners pray the Court for all such other and further relief as may be just and proper."

The Court below went into proof as to the various allegations in the petition; came to the conclusion that there were some mistakes in the settlement of the executor Medin, but no fraud, and dismissed the petition. The petitioners moved for a new trial, which was denied, and appeal to this Court from the judgment or order of dismissal and from the order refusing a new trial.

Upon the argument of the case in this Court, one of the points most seriously urged by the respondents is, that the petition does not state facts sufficient to entitle the petitioners to the relief sought. This brought up the question whether this petition might not be treated as a bill in equity. The petitioners insist that the District Court, having equity jurisdiction, and the facts in this case stated being such as to require the interposition of a Court of Equity, the proceeding may be treated as a suit in equity, and a decree rendered giving such equitable relief as the proof in the case will justify.

We think the counsel for petitioners are not correct in this position. Although the District Court has jurisdiction in common law, chancery and probate cases, yet the proceedings in each are separate and distinct. At least, a proceeding in a probate case must in its very nature be distinct from an action at law or a suit in chancery. Under our practice an equitable defense may be set up to an action at law, and in this way the common law and chancery practice become to some extent blended in the same case. In other respects the proceedings in chancery, at common law and in Probate Courts are distinct, and the proceedings in one class of cases should not be mixed up with those of another. This, it appears to us, was peculiarly a proceeding in the Probate Court, and

had none of the characteristics of a suit in equity.    If it were a suit in equity, there would be a fatal objection to it.    It would be a bill to set aside the settlement and accounts of an executor who has not yet made his final settlement with the Probate Court.    This, it appears to us, would be very objectionable.    A Court of Equity certainly has the power to inquire into the *final account* of an executor, and proceed to hear evidence to falsify and surcharge the account for fraud, and to render such decree as is necessary to do equity in the case.

But if any bill has ever been sustained against an executor to falsify and surcharge an account *not final*, it has escaped our observation, and we are not referred to any such in the brief of counsel.

We think such a practice would be extremely inconvenient.    If indulged, it might result in having several bills pending between the same parties at the same time, regarding the settlement of a single estate.    There would certainly have to be something extraordinary in the case before a Court of Equity would countenance such a proceeding.

We must, then, consider this as a proceeding by petition in the Probate Court, and endeavor to see to what relief the petitioners are entitled.    The petition was presented in the first place rather irregularly by the attorneys of the legatees, in their own name instead of the name of the legatees.    Whilst this was irregular, it was not, perhaps, fatal to the petition.

The petition is entitled, "In the matter of the estate of Marco Milinovich, deceased."    Such an estate was in course of settlement before the Court; an error in the parties to the petition was such an error as we think the Court might amend, and properly did amend, by substituting the names of the legatees for those of the attorneys.    It is not like bringing a suit in the name of the attorney instead of the principal, which would be such a fundamental error as could probably only be remedied by bringing a new suit in the name of the proper parties.    If we look at the facts stated in the petition, we think it shows abundant grounds for asking the interposition of the Court to protect the estate from utter waste and destruction.    The prayer of the petition does not appear to have

been framed with a view to the exact relief which a Probate Court could have given under the existence of a state of facts such as is stated in the petition.

Section 115 of the Probate Act is as follows:

" Whenever property not mentioned in any inventory that shall have been made, shall come to the possession or knowledge of an executor or administrator, he shall cause the same to be appraised in the manner prescribed in this chapter, and an inventory to be returned within two months after the discovery thereof; and the making of such inventory may be enforced after notice by attachment or removal from office."

The first part of the prayer is certainly directed to the relief provided in this section, and the allegations of the petition and the proof equally show that the Court should have ordered a new inventory.

Sections 226, 7, and 8, of the Probate Act, read as follows:

" SECTION 226. Any person interested in the estate may, at any time before the final settlement of accounts, present his petition to the Probate Judge, praying that the executor or administrator be required to appear and render such exhibit, setting forth the facts, showing that it is necessary and proper that such an exhibit should be made."

" SEC. 227. If the Judge be satisfied, either from the oath of the applicant, or from any other testimony that may be offered, that the facts alleged are true, and shall consider the showing of the applicant sufficient, he shall direct a citation to be issued to the executor or administrator, requiring him to appear at some day to be named in the citation, which shall be during a term of the Court, and render an exhibit as prayed for."

" SEC. 228. When an exhibit is rendered by an executor or administrator, any person interested may appear, and by objection in writing, contest any account or statement therein contained. The Court may examine the executor or administrator, and if he has been guilty of negligence, or has wasted or embezzled, or mismanaged the estate, his letters shall be revoked."

Under the provisions of these sections, if the allegations of the petition are true, the executors should have been cited to appear,

and if it was shown by the evidence that the executors. had been guilty of *negligence, waste, embezzlement, or mismanagement* of the estate, they should have been removed. The final settlement of the accounts with the executors should have been made, and they ordered either to pay over the money and estate to the legatees, or to an administrator, with the will annexed, as the case might require. The transcript contains neither the will of decedent, the inventory of the effects, nor the powers of attorney of those parties who are representing the legatees. In the absence of these necessary documents, the Court cannot say what order should be made in the premises.

The transcript before us contains over three hundred pages ; nearly three hundred of it is taken up with the testimony. The handwriting is not very legible, and we will not attempt to say whether the charges of fraud have or have not been sustained. To determine this point would require a careful weighing of the testimony, which would be very difficult with such a transcript. It is certain, if the evidence for the petitioners is true, there have been gross and outrageous frauds practiced. But, on the other hand, this evidence is contradicted in all material points by that of respondents. We think the Court below, on a rehearing, will be better able than ourselves to weigh this evidence, and accept what is probable and reject what is improbable and not entitled to credit.

But outside of the question of fraud, there are other questions which it is proper for this Court to pass on. Waste, negligence, and mismanagement are equally as good grounds for removing executors as actual fraud or embezzlement.

In this case, one of the executors has totally neglected his duties as such. He appears to have done really nothing. If one qualifies as executor it is not enough that he fails to do anything actually wrong : he must do what is necessary to protect the estate, or he should be removed.

The other and managing executor has certainly wasted and mismanaged the estate in almost every conceivable way.

When he came into possession of the estate he found $1,480 in gold, belonging individually to the testator, besides his share of cash on hand in saloon, amounting to $443.75, in all $1,923.75.

Lucich *v.* Medin.

Decedent also had a half interest in liquors to the value of $4,758.36, at invoice price, if we understand the testimony, or if that was not the invoice price, it was the invoice price with the freight added. These were readily saleable at the cost price, and perhaps something more, so that he had what was equivalent to at least $4,300 in cash. He also came into the possession of real estate which was producing a monthly rental of about five hundred dollars. The estate did not owe, apparently, a dollar, except the expenses of testator's last sickness, which only lasted about fifteen days.

At the end of nineteen months the personal property is all gone, and the acting executor brings out the estate as $5,341.22½ in debt to himself, having in the meantime paid legacies to the amount of $3,538. In other words, he brings the estate in debt to himself some $1,800 over and above what he has paid to the legatees.

This certainly suggests to the mind at once some mismanagement of the affairs of the estate by the executors. If we examine the items of expense in detail, that impression certainly is not removed.

When the testator died he was half owner of a drinking saloon, which, it seems, made a *profit* of nearly $900 in the fourteen or fifteen days during which he was sick. After his death, the executor Medin, who was also part owner of the saloon, made haste to sell the same, nominally, to Mark Lovely and Spiro Vicanovich. He did not wait to qualify as executor, he did not have any appraisement of the stock on hand by any reliable and accessible person. He did have it appraised by a Mr. Dougherty, but he was not a resident of the State, and was not produced in the trial of this motion in the Court below. While the sale of the saloon was made nominally to Lovely and Vicanovich, there is certainly testimony enough to show that Medin himself was the real purchaser of at least one-third of the establishment, and indeed some testimony tending strongly to show that Lovely was then an agent of Medin, and that neither he nor Vicanovich paid anything for their interest in the saloon at the time of the sale. That the business was carried on with the means of testator, and nothing paid to Medin except the proceeds of sales from the liquors until he was paid up. This was certainly neither a prudent nor commendable

method of proceeding. It is, to say the least of it, calculated to throw suspicion on his conduct and motives.

Mr. Medin selects Mr. Dougherty as the appraiser, but he is at once the purchaser and the seller. His flimsy attempt to show that he only came into the concern *after* Lovely bought it, is only calculated to make his motives the more liable to an unfavorable interpretation.

When at a subsequent period he qualifies as executor, instead of stating the amount of money and liquors on hand in the saloon in which testator had a half interest, he only returns $1,295.47 as the net proceeds of testator's share, thus swallowing up more than half of the testator's share without any showing of what had become of it.

He makes the funeral expenses of the testator (a saloon-keeper in fair circumstances, but not very wealthy) over $1,200. He pays large assessments on mining stocks without any order of the Probate Court for so doing. He charges interest for money he probably never borrowed, or if he did borrow it, it was without the shadow of authority so far as shown by this transcript. What authority he may have derived from the will of the testator or the powers of attorney of the legatees we know not. He paid one attorney $500 for nothing that we can see, unless it was for advising him how to squander the estate. He pays, or claims to have paid, another, the same amount for compelling himself to admit his coëxecutor to a participation in the management of the estate.

When an estate is involved in litigation an executor has a right, and it is his duty, to employ counsel at the expense of the estate to defend its interests, but he has no right to charge the estate with the expense of counsel for doing what he himself should do. An executor is paid a per centage for keeping the accounts and attending to the ordinary affairs of an estate. If he is so ignorant as not to be able to do this himself, he must out of his per centage pay for the necessary assistance.

In this case, the estate was involved in no litigation requiring the employment of counsel, except the litigation about the title to real estate. For that there is a separate charge, distinct from the two items of $500 each, to which we have alluded. We have

alluded to all these extravagances to show the necessity for immediate action on the part of the Probate Court.

That Court should immediately order the executors to file an account making a full showing of all the property and assets that have come to their hands up to the date of filing such account. The Court should cause a settlement to be made with the executors, and all proper orders made to stop the unnecessary waste of the estate. Without the will before us we cannot tell what are the necessary orders to be made. Whether the estate shall be distributed among the legatees and devisees, placed in the hands of an administrator with the will annexed, or continued in the hands of the present executors, with such orders about the management of the estate as will stop the reckless expenditures heretofore indulged in, we cannot determine from the transcript before us.

One of the great difficulties presented to our minds in disposing of this case is, to determine what the Probate Court may review, determine or adjudicate when the case goes back for trial.

The 239th Section of the Probate Act seems to provide that what is adjudicated in one settlement of an executor's or administrator's account shall not be open to adjudication in any future settlement in the Probate Court.

That a *final* settlement with an executor or administrator is and ought to be considered *res adjudicata,* and not open to further question, except when a bill in chancery is filed charging fraud, is a well settled principle; but to hold that a partial and incomplete settlement should preclude the Probate Court from further examination of the executor's accounts, seems, to say the least, rather inconvenient. In obedience, however, to what appears to be the plain letter of the statute, we must so hold. But in holding that a partial account, acted on by the Probate Court, is to be considered as *res adjudicata,* we have high authority for saying it is only to be so treated as to those matters which the account and the decree of the Court show were fairly before the Court for adjudication. The general result at which the Court arrives, even in a *final* settlement, is immaterial. If the Probate Court finds, for instance, that an executor has properly paid out all the estate that came to his hands, this will not prevent one interested in the estate from pro-

8

ceeding in the Probate Court to compel the executor to account for property not mentioned in his account.

The settlement of an account is only *res adjudicata* as to those matters actually embraced in the account. For this principle see the very sensible opinion of Chief Justice Shaw in the case of *Field* v. *Hitchcock*, 14 Pickering, 405.

It has also been held that where a *mistake* appears in a former settlement, it may be corrected in a subsequent one. (See 1 Pickering, 159–60.)

It may be difficult to determine, under this latter rule, where the line is to be drawn as to that which may be corrected as a mistake and as to that which shall stand as *res adjudicata*. It would at least be safe, if anything is to be corrected which has once been passed on, to say everything is liable to correction which shows upon its face that it is erroneous: that there has been a mistake either of fact or law as to that item.

This would allow the Court, at any time before final settlement, to correct its own errors, but not to reopen the proof as to accounts allowed, except perhaps in cases where the account showed error *on its face*, but did not show (without explanation) the extent of the error.

So, too, where anything is admitted by the executor or administrator to be a mistake, all this may be corrected. But if the mistake or error are only to be shown by going anew into the proof, this should be held as *res adjudicata*, and not liable to be opened to new testimony.

Adopting these rules, then, let us see what can be investigated in a new trial of this motion. There was an account filed by one of the executors in February, 1864, but no notice seems to have been given as to the settlement of this account, and no action seems to have been taken thereon. In February, 1865, a second account was filed, not embracing what was contained in the first, but merely setting out with the balance as shown by that account, and *continuing* the account from that time down to the filing of this second account. Upon the filing of this account, notice was given that the Court would hear exceptions to the same, and take such steps as the law requires for the settlement thereof. This case seems to have

been regularly brought to a hearing, and the account was examined. But, in approving this account, we hold the first account was in no manner approved or acted on. Had the first account been properly approved, then it would have been proper to commence where that left off. But as the first account was never approved, the mere assertion in the second account of what appeared as the balance due on the first cannot be held to preclude an examination into the items of the first.

The first account has never been the subject of adjudication. That the Court and the counsel who drew up the decree of settlement considered only the latter account as adjudicated is apparent from the language of the decree. That decree concludes as follows:

"And it appearing to the Court, after due examination, that said account contains a just and full statement of all the moneys received and disbursed by said executor from the twelfth day of February, A.D. 1864, the date of the preceding report of said executor, to the twelfth day of February, A.D. 1865, including all sums of money belonging to said estate which came to his hands as such executor, or were received by another by his order or authority for his use as such executor, during said period; that the amount of said money thus received was $6,483.83½, and the amount thus disbursed $11,825.06, leaving said estate debtor to said executor in the sum of $5,341.22½; that for the items of disbursements proper vouchers are produced to the Court; and it being proved by the affidavit of said executor, annexed to his account, that the items of his expenditure named and charged in said account have actually been paid and disbursed by him, at the place where, the date when, and the parties to whom the said payments are stated in the said account to have been made respectively. And the Court having duly considered the said report and account, and the proofs and allegations and matters aforesaid:

"The Court finds that the said account is just, true, and correct, and entitled to be allowed and approved.

"And now, on motion of G. D. Keeney, Esq., attorney for said executor, it is ordered and decided that the said account and report of Marco Medin, executor as aforesaid, be and the same are

hereby in all respects, as the same were rendered for settlement by the said Marco Medin, executor, etc., approved, allowed, and settled."

If, then, only the second account was properly adjudicated, all that was embraced in the first account is open to inquiry. The Court may inquire into the funeral expenses, both as to what was expended and as to the reasonableness of the expenditures. It may inquire into the circumstances of the sale of the Uncle Sam stock, as to whether it was a fair and *bona fide* sale. The same taxes are admitted to be included in both bills : they must of course be excluded from the first. Inquiry may be made into the matter of rents from the death of testator to February 12th, 1864, the value of liquors on hand, the fairness of the sale, etc. Indeed, the whole question is open, so far as the period from the death of testator to February 12th, 1864, is concerned ; and the executor should be compelled to make a full showing as to this part of the affairs of the estate, both as regards the property which came to his hands and as to the repairs he made. His vouchers for expenditures in repairs should be produced, or if lost, accounted for.

Inquiries may also be made as to whether these expenditures were reasonable and proper. Of course the executor must account for jewelry, etc., omitted from the invoice.

With regard to the compromise affair, we are more at a loss than in regard to any question presented in the record.

Here is an item of the account of February, 1865. If anything was adjudicated in regard to this item, it was : first, determined that this amount was paid ; second, it must also have been determined that it was rightfully paid : for these are the very questions presented as to each item of an account presented for settlement. Whether it was paid, was a question to be determined by proof. Whether it was rightfully paid, was a mixed question of law and fact. If the executor, on his own motion, could pay this amount of money and hold the estate responsible, then we must in this case presume that it was proved to the satisfaction of the Court that this was rightfully paid. But we incline to the opinion that an executor, without the order of the Court, could not lawfully make such payments. A suit pending

against the estate at the time, we are inclined to think, under the provisions of the 203d Section of the Probate Act, might, upon the order of the Probate Court approving such a course, have been compromised, and the money paid to effect a settlement. But the executor, without the advice of the Court, had no right to make such a compromise.

He did, however, make the compromise ; and as he was both executor and tenant in common, he must be considered as having made it in his capacity of tenant in common.

The law is well settled that when one tenant in common buys in an outstanding title, it inures to the benefit of all his cotenants, if they elect to bear their share of the burthens of the purchase. (See 4 Kent's Commentaries, p. 311, note C, 10 edition.)

But the cotenants cannot, we think, (unless they have previously assented to or encouraged the purchase) be compelled to contribute. It appears to be purely a matter of choice with them whether they will contribute and take the benefits of the purchase, or stand on their former rights. We have not met with any reported case where a cotenant has been forced to contribute, where he fairly and openly chose to renounce the benefits of the purchase.

The devisees in this case are then entitled either to contribute or reject the terms of this compromise. We think that right has not been and cannot be properly presented to them in the Probate Court. This is a matter to be settled between the parties amicably, or in a Court of Equity. The Probate Court has nothing to do with it.

The executor clearly had no right to borrow money for the estate unless expressly authorized by the will, and the charge for interest in his second account must be struck out unless so authorized. An executor has no right to speculate for or with the estate. If he held mining stock which was likely to be forfeited before he could apply to the Court for instructions, he might be justified in paying something to preserve it. But he is certainly not justified in borrowing money for mining speculations.

If he held stock liable to large assessments, he should have applied to the Court for leave to do one of two things : either to sell the stock, or, better still, if the estate was surely solvent without the stock, to turn it over to the legatees, and let them sell, or take their chances on speculation with it.

The order of the Court below must be reversed and set aside.

The petitioners will be allowed to amend their petition, if they so desire; and further proceedings will be had in accordance with the views expressed in this opinion.

RESPONSE TO PETITION FOR REHEARING.

Opinion by BEATTY, C. J., LEWIS, J., concurring.

In this case a petition for a rehearing has been filed, indicating that the original opinion herein has, to some extent, been misunderstood. Had counsel read the opinion a little more carefully, it appears to us at least a portion of the matter contained in the petition might have been omitted.

However that may be, we will endeavor to make ourselves more fully understood on some of the points referred to.

We did not hold, as counsel say, "that the 239th Section of the Probate Act makes the settlement of an executor's or administrator's account final and not open to further question, except by bill in chancery charging fraud." At least we did not hold it in the unqualified terms used by counsel. We distinctly held that the Court, notwithstanding the 239th Section, might, at any time before *final* settlement, correct its own errors, whether of *law* or fact. That any error apparent on the record might be corrected before final decree, but the Court could not open the *proof* as to the matters of account already passed on and settled by interlocutory decree.

It is the failure to notice this distinction which seems to have misled counsel in various particulars.

Counsel complain that this Court assumes that there never was but one settlement of the executor's accounts upon notice, whilst in fact there were two such settlements. That they were injured by this assumption of the Court. That no such point was ever made by the opposing counsel, and if it had been, they could have shown that it was unfounded. That if the record fails to show both settlements it was not the fault of respondents, it having been made up solely under the direction of appellants.

The plaintiffs (appellants) attack certain payments and expenditures of respondents. The respondents say these expenditures cannot be inquired into, because they have already been passed on by the Probate Court. To show that they have been passed on by that Court, respondents refer to a decree which clearly shows that part of these items have been passed upon, but fails to show any adjudication as to other portions of the account. This decree is contained in the record before this Court.

We certainly could not know that respondents had introduced evidence in the Court below which was not contained in the statement of the case, or that their answer contained matter not copied in the record. If the transcript failed to contain any portion of the evidence or pleadings material for the defense, it was the business of respondents' counsel to have the record amended.

Reference is made in the petition to various expressions in the transcript which counsel seems to think indicate that there were two decrees actually made in the Probate Court in regard to these accounts. We think no one, not otherwise acquainted with the fact, would ever have drawn such inference from the record. All the expressions quoted are entirely reconcilable with the existence of but the single decree found in the record, except one word. The word *decrees* is used in one place where it should have been in the singular, (*decree*) if there was only one settlement. But when that word appears in the record, it seems to be shown by what immediately follows that the *s* was a mere clerical error.

The transcript is so badly made up, that we are at a loss sometimes to understand how certain matters got into it. The body of the answer, as contained in the transcript, makes no reference to any exhibits. But immediately after the affidavit to the truth of the matter contained in the answer follow the two accounts, and then this sentence: "That upon the filing of the accounts such proceedings were thereafter had, that the Court rendered and entered the following *decrees*." After this follows the decree settling the last account only. Then comes a statement of the evidence, etc. On the margin of these accounts is marked, "Answer continued." We infer then that these accounts and this decree must have been attached to the answer as exhibits. But because the Clerk uses the

plural, *decrees*, we could not well infer that there was another decree attached as an exhibit to the answer which he did not copy. Especially could we not so infer when the answer wholly fails to aver the existence of any such decree.

But whilst the record utterly fails to show in any manner that there was more than one decree in regard to the settlement of accounts in this estate, we will so far modify our former opinion as to direct the Court below to give to the first account, if it should appear to have been properly settled upon notice and a regular decree of settlement made thereon, the same effect that we have given to the second account, which was settled in March, 1865.

Whatever upon the face of the account and decrees seems to have been once adjudicated must be considered closed, except in so far as the record itself may show some error in the former decree. If it should appear that this first account was regularly passed on and settled, it will of course much abridge the extent of inquiry in any subsequent trial. We cannot, in the absence of what is claimed to be a regular decree, determine its character or sufficiency. To prevent misunderstanding, we will say the first item of the first account is for $1,480, cash on hand. The passage of this account would not prevent the appellants from showing there was cash on hand at death of testator other than or beyond the $1,480.

The next item is $3,573.75, rents. The passage of this account, with this item, does not preclude the appellants from showing that the executors may have received other rent, or rents, to a greater amount than $3,573.75. These are mere admissions of a general result, and do not purport to be items of account presented in proper form for adjudication of the Court.

With regard to the third item, $1,295.47, received from the settlement of partnership business, it is evident this also is the mere result of other accounts. It is not an account in such form as could properly be presented for settlement. The Court may properly go into an investigation of the accounts which produced this result, unless there was a former settlement with the Probate Court, and this is the balance found on that settlement. In the absence of such settlement, the Court may go back to the start, ascertain what amount of partnership property came into the hands of the execu-

tors, how they disposed of it, and what were the legitimate expenses to be deducted.

In regard to the items of expenditure for the estate as charged in this account, with the exception of the last item, $294.12½, they are all of such a character as might legitimately have been paid by the executors.  And if it appears that this account was regularly passed on, the law supposes satisfactory proof as to the payment of each item was made, and they are not the subject of investigation in this proceeding.  If there was fraud, as insisted by appellants, in the charges for funeral expenses, etc., that must be reached by another proceeding.

As to the last item in this account, charged against the estate as money advanced, without any specification as to when, where, or for what advanced, we think it was error to allow it on such a vague statement.  The executor should still be required to show for what this was paid and allowed, be such portion of it as they can show was properly expended.

In the beginning of the second account is a repetition of certain charges against the estate to the amount of $751, which were contained in the first account.  We think the accounts themselves clearly show this error, and it is admitted by the executors.  This can be corrected in the next settlement.

The intention of this Court in requiring the executors to file new accounts making a full showing of all the property and assets that have come to their hands, etc., was to have them file a statement, first, of the amount and value of the jewelry, watch, etc., which it is admitted came to the hands of the executors, or one of them, and was never placed in any inventory or account of the estate.  Another was, to make them show the amount of partnership property which belonged to decedent, and the particulars as to the manner of disposing thereof, and the expenses of closing the partnership affairs, instead of merely returning the general result as netting $1,295.47.  So, too, instead of the general return of $3,573.75 for rents for the first term of —— months, the petitioners are entitled to an account of the items making up that general result.

It was not the intention of this Court to require that which had once been properly passed on to be reöpened.  With regard to the

amount paid for the purchase of an 'adverse claim to the real estate held as tenants in common by Medin and Milinovich the deceased, we will repeat: as the executor chose to compromise this suit and buy in the outstanding title without asking leave of the Probate Court, (which was the only legal course he could have taken as executor) he must be deemed to have acted in that purchase not as executor, but as a tenant in common. Having then purchased in the estate as a tenant in common, his purchase inures to the benefit of all his cotenants unless they, upon a proper offer made to them, refuse to sanction the purchase and contribute their share of the purchase or compromise money. We have already said this is a matter which cannot be settled in a Probate Court. The parties must either settle this matter between themselves, or resort to the equity side of the Court to settle the difficulty.

It is claimed that petitioners have ratified this purchase by accepting the rents, etc. We can see no evidence of ratification in this. Respondents came into possession of one-third of the estate as representatives of deceased. They can no more deny the title of deceased than a tenant can deny the title of his landlord. Upon the mere *ipse dixit* of the executors or their counsel that the adverse title bought in is a better one than that under which they formerly held, the executors cannot retain the share of rents belonging to the deceased. But we do not understand that petitioners wish to renounce the benefit of the purchase. They seem willing to pay their portion of the purchase money. The dispute is as to what was legitimately paid. The amount paid to the real holders of the adverse title is not questioned. Petitioners only question the propriety of large payments made, as they claim, unnecessarily, if made at all, to parties who neither had nor claimed to have any title to the property. The Probate Court can neither investigate the facts as to whether these outside payments were or were not made, and if made, whether made rightfully or without necessity and wrongfully. If the parties cannot settle this matter between themselves, it must be settled in another Court. In the meantime the rents must be accounted for by the executors.

This Court ordered the interest items to be struck out, because

it is unlawful for an executor (unless authorized by will) to borrow money for an estate.   No state of proof could have justified the allowance of these items, therefore they were improperly allowed; and that is one of that class of errors which the Court may correct before final decree.

Counsel complain that whilst the Court fails to find fraud against the executor, it still uses many expressions calculated to place him before the community in a very unfavorable light.   The Court, in its opinion, did intend to refrain from any expression of opinion as to the charge of fraud, but at the same time intended to express in language not to be misunderstood its disapproval of the reckless and wasteful manner in which this estate was managed, the utter disregard of law shown in every step of the management, from the death of the deceased to the commencement of this proceeding.   It is the intention of this Court, so far as in its power, to put a stop to the waste and destruction of the estates of deceased persons; and we shall not hesitate to express our views of the law because it may injure the feelings of some executor or administrator who thinks that he is only following the common custom of the country, and therefore perfectly justifiable in squandering the estate that may come to his hands.

We again repeat what we said in our former opinion: that extravagance, waste and mismanagement of an estate afford the same ground for removal of an executor as absolute fraud.

A rehearing is denied, but the judgment is so modified as to direct the Court below to conform in its future proceedings to the views as expressed in the former opinion, and as modified in this response to the petition for a rehearing.