[S. F. No. 990. Department Two.—October 4, 1897.]

In the Matter of the Estate of ELIJAH E. SMITH, Deceased.

ESTATES OF DECEASED PERSONS—CARE OF VINEYARD—ACCOUNTING.—Expenses necessarily incurred by an executor in preserving a vineyard forming part of the testator's estate, and preventing the vines from being destroyed, are proper charges against the estate, for which he should be given credit in his accounting. And the presumption is that in making them the executor acted in good faith, in the absence of proof that he knew he could have caused the vineyard to be preserved at less expense.

ID.—LIABILITY OF EXECUTOR—SPECULATIVE VENTURE.—The rule as to an executor's liability for the unlawful employment of the funds of the estate is not that he is to be charged for all money invested in the speculation, and also with all that is received from it, but only that he must make good the loss resulting from the business, or if a profit has been earned that he must account for it to the estate.

ID.—CREDIT FOR PROPER EXPENDITURES.—Upon an accounting by an executor he should be given credit for expenses of administration properly made by him; and the court cannot properly reserve the question of the propriety of such disbursements for a future occasion, and charge the executor with the amount so expended as being money in hand, and direct him to apply the same to the payment of a family allowance.

ID.—CONSENT OF COURT.—The failure of an executor to obtain the consent of the court to the expenditure of the money of the estate to a particular purpose does not render such expenditure improper.

APPEAL from an order of the Superior Court of the City and County of San Francisco settling the account of an executor. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Chickering, Thomas & Gregory, and Gerstle & Sloss, for Appellant.

Timothy J. Lyons, and E. D. Sawyer, for Respondent.

TEMPLE, J.—This is an appeal by the executor from a decree settling the executor's third account and directing him to

pay a certain family allowance. The decedent died testate October 17, 1892, having named Leon Sloss executor. Sloss qualified as executor November 16, 1892.

The testator left a vineyard in Fresno county of one hundred and twenty-five acres. The vines were four years old. The executor took possession and during the ensuing year—1893— expended in pruning, plowing, cultivating, and irrigating it $4858.84.

During the year 1894 he expended for the same purposes $757.91, and in connection with the sale of raisins from the vineyard, for drayage, etc., $483.17. In his account for that year he charged the estate $242 for interest on moneys advanced by him.

In the year 1895 he expended for like purposes the sum of $168.50, making a total, including the charges for interest, $6,268.07.

May 31, 1894, an allowance was made to the widow of deceased of $150 per month from the death of decedent. At that time the executor had already expended $6,059.27 in caring for the vineyard.

In January, 1896, the widow caused the executor to be cited to show cause why he should not pay out of the funds in his hands the accrued allowance. The executor had a few days previously filed his third annual account, which he designated his final account, and asked leave to resign his trust. To the citation he answered that he had no funds with which to pay the allowance, and the matter of the petition and the account were heard together.

The executor has received from the vineyard for the raisins $2,246.78, and as rent $1,000.

The court found that no more was spent on the vineyard than was necessary for pruning, plowing, cultivating, and irrigating the same; "that a vineyard in Fresno county requires irrigation every year; that it is necessary for the preservation of the vines that they should be pruned and the land plowed, cultivated, and irrigated every year. Should they not be pruned and the land plowed, cultivated, and irrigated every year, the minimum damage would be that the vineyard would be set back three years,

and the maximum damage under these conditions would be that the vines might die altogether."

The court further found that none of the expenditures were an expense of the administration or a charge against the estate, "but the matter of said items and of the said advances may without prejudice be left for a final accounting in the matter of said estate, at which time all the circumstances proper to be considered may more properly arise, and particularly the question of loss or benefit to the estate."

In the decision it was adjudged: "That said amended third (also styled final) account be and it is settled and allowed as follows, viz: That the said executor, Leon Sloss, is chargeable, and is hereby charged, with a balance of moneys in his hands of five thousand eight hundred and forty-eight dollars and 90-100 ($5,848.90), as of November 7, 1895, and with the real property and premises in the inventory and appraisement on file herein; and that the following items of said amended third account be and are rejected and stricken out, namely: 'November 6. Balance due Leon Sloss for advances, $661.52'; and 'January 1. Balance due Leon Sloss for advances and expenses of administration, as per second annual account, $4,100.91.' Provided, however, that as to the items referred to in said decision as vineyard items, the same may be presented by the executor, at his option, for the future consideration of the court upon the final settlement herein, or at such future time as may be deemed proper or expedient."

If the expenditures upon the vineyard were properly made, the executor had no money in his hands belonging to the estate. The court also charged the executor with the sum of $3,246.78 received from the vineyard. The same decree directed the executor to pay to the widow out of the money so found in his hands the sum of $5,575, the amount of the family allowance which had then accrued.

The parties have stipulated that the evidence is as indicated by the findings, the appellant only reserving the right to claim that certain findings of fact are conclusions of law. Possibly this stipulation does not do justice to the probate court. Our decision, however, must rest upon this basis.

Upon this evidence there can be no doubt that the court erred

in refusing to give the executor credit for the money received from the vineyard. It is quite manifest that nothing would have been realized either from the sale of raisins or rents for the year 1895 if the vineyard had not been kept up. It is suggested that it does not appear that this vineyard might not have been rented and kept up without expense to the estate. It being admitted that the expenditures were necessary to prevent the vines from being destroyed, the presumption is that the executor has acted in good faith, unless proof was made that he knew he could have caused the vineyard to be preserved at less expense.

The primary purposes and reason for administration of an estate are: 1. To preserve the estate until distribution can be made; and 2. To pay the debts of decedent. In *In re Moore,* 57 Cal. 437, the court stated the different objects to which the assets of an estate may be applied. In that view the statement is accurate. It was not an attempt to state why an administration is necessary. It would be absurd to say that the object of administration is to pay the expense of administration, nor did the court intend to say so. All other matters are incidental, and made proper because of administration, the necessity for which is as I have stated.

The expenses of administration must, in the nature of things, have priority in the order of payment. The executor cannot be compelled to pay them from his personal assets, but may apply the money in his hands belonging to the estate to that purpose. The will is not in the record, and there is nothing to show that there are any special funds in the estate. All are subject to the payment of expenses. The sources from which they have been derived are immaterial. Even if the expenditures were unauthorized, and the court should find that the money expended in the preservation of the vineyard was an unlawful use of the funds, the executor would be entitled to credit for the money received from the vineyard. The rule as to the unlawful employment of the funds of the estate is quite simple. The estate is to suffer no loss, and the executor is to make no gain. This does not mean that the executor is to be charged for all money invested in the speculation, and also with all that is received from it, but only that he must make good the loss resulting from the business, or if

a profit has been earned that he must account for it to the estate. The failure to give the executor this credit was, no doubt, an inadvertence.

And I think it was improper to order the executor to pay the allowance, reserving the question as to the propriety of the disbursements. If the money was expended properly for the preservation of the property of the estate, the order in effect required the executor to advance the money from his own funds. The court has no power or right to declare, if the money was so expended, that the executor has money in his hands as executor. If the expenditure was necessary, it was the duty of the executor to apply the funds in his hands as executor to that end, and, having so done, he cannot still have the money.

It is the duty of the executor, without special direction of the court, to preserve the property of the estate, and he does not require leave of the court so to do, and it is a question how far an order so obtained will protect an administrator either in doing or in omitting to do something which might be deemed important. When the court is so consulted the heirs are not specially cited, but on the settlement of the accounts of an executor they are called in and have a right to question the acts of the executor and to have an appeal to this court upon any determination which may be made. The previous consent to the acts of the executor cannot limit their inquiry as to the lawfulness of the acts done or the duty of the executor to do that which has been omitted. Ordinarily, it would determine the question of good faith, and quite often that is the only matter in issue. Hence, it is always an advantage to have such permission. Still, the failure to obtain it does not render the expenditures made improper. The only result is, that the matter is yet to be passed upon.

The question as to whether the expenditures made were necessary has not yet been determined by the probate judge, and we are not called upon to decide the question now. He might find that they were not necessary, or that manifestly the property was not worth the cost of preservation, and that the executor did not act in good faith in the matter. Had the vineyard been but one year old, for instance, a very different question would have been presented. So I think it an important matter that the estate was not fully administered within the year. The will is not be-

fore us. If it made it necessary to protract the administration for a number of years the problem would be quite different· Ordinarily, an administrator should not manage either a vineyard or a farm at the risk of the estate. When the estate is settled, as it should be, within the year, this is a small matter, and we may presume a tenant for a vineyard for that short time could not be had.

The estate seems to be solvent. Otherwise the allowance could only be made for one year. That being so, I do not see what difference it makes that the vineyard is mortgaged. What the mortgagee does not get from the security he will get from the estate. The interest of the heirs, therefore, is to have the property preserved. Whether the duty of the executor would be different if the estate were insolvent we are not called upon to determine.

The court also reserved its conclusion as to the matter of the estoppel. Very likely there will be no occasion to determine it.

I find nothing in the matter of the *Estate of Knight,* 12 Cal. 200, 73 Am. Dec. 531, or in *Tompkins* v. *Weeks,* 26 Cal. 50, at variance with the views here expressed. Authority to the effect that an executor may not invest the funds of the estate in an outside venture is not authority upon which it can be held that an executor must not preserve the property which has come to his hands as executor. The last is his duty before all·others. For any failure here he will be held liable. No other case cited seems to bear upon any issues raised here.

The decree is reversed and the case remanded for further proceedings.

McFarland, J., and Henshaw, J., concurred.