[No. 2311]

# In the Matter of the Estate of PATRICK H. DELANEY, Deceased.

[171 Pac. 383]

1. Executors and Administrators—Speculative Expenditures—Necessity of Court Order.

Where an estate had few debts, and consisted largely of cash and four mining claims, and the administrator, without court order, paid out $1,600 for assessment work on the claims, when adjoining claims gave promise of profit, and later abandoned the claims, the venture was so speculative as to surcharge the administrator with such sums.

2. Executors and Administrators—Duties—Sureties—Liability.

An administrator is bound to the exercise of care and diligence, such as prudent and judicious men ordinarily bestow upon their own important affairs, and it is his duty to settle and distribute the estate with as little delay as practicable; and whenever he does what the law prohibits, or fails to exercise reasonable care and diligence in the endeavor to do what the law enjoins, he and his sureties are liable for the damage consequent upon such act or omission.

3. Executors and Administrators—Duties of Administrator.

Under Rev. Laws, 5963, 5964, 5967, 6041, as to duties of an administrator, expedient administration is required, and where an estate had cash on hand to meet all indebtedness, and everything was present to facilitate a speedy discharge of the trust, but the administrator permitted the estate to drag on for nearly seven years without an accounting and without any attempt to secure an order for expenditure of money, he was guilty of a breach of his duties.

4. Executors and Administrators—Funds—Interest.

Where the estate at all times had sufficient money on deposit under certificates of deposit to pay indebtedness, but the administrator made no accounting for nearly seven years, he was chargeable with interest on the moneys, although there was a suit to establish heirship.

5. Executors and Administrators—Surcharging Administrators.

Where an estate was administered in a judicial district consisting of two counties where sessions of the district court might occur at the judge's direction, the administrator's failure to secure an order for expenditure of moneys in assessment work on mining claims for one year would not necessarily charge him with such amount when the investment proved to be speculative and worthless.

6. Executors and Administrators—Funds—Interest.

Where money of an estate is held by an administrator after the time when by proper accounting and other administrative acts in conformity with the statutory requirements, he could have paid out and distributed the same by court order, he should be chargeable with interest on the money thus held.

APPEAL from Third Judicial District Court, Lander County; *Peter Breen,* Judge.

In the matter of the estate of Patrick H. Delaney, deceased. On appeal from rulings on items of the account of the administrator. **Reversed and remanded.**

*Milton B. Badt,* for Appellants:

Although the administrator may have done the assessment work on the mining claims in the best of good faith, he will not be heard at this time to say that he is entitled to credit for those speculative expenditures that resulted so disastrously for the persons entitled to distribution. "If he takes the responsibility of improving the estate or bettering the title in this way, it must be at his own risk." (*Estate of Knight,* 12 Cal. 200, 208.) "An executor has no right to speculate for or with the estate." (*Lucich* v. *Medin,* 3 Nev. 93; *In Re Shinn's Estate,* 166 Pa. St. 121; *Estate of Nicholson,* 1 Nev. 518; *Estate of Rose,* 22 Pac. 86.)

Where an estate suffers loss by reason of the administrator's failure to distribute the funds within a reasonable time, as by the failure of the bank with which such funds are deposited, the administrator and his bondsmen are liable for the loss. (*McNabb* v. *Wixom,* 7 Nev. 163; *Brenham* v. *Story,* 39 Cal. 175.) "The simple duties devolving on executors up to the point when the estate is ready for distribution" have been set forth as follows: "The duties of the executors are to preserve the estate, pay the indebtedness of the deceased, the charges of administration, and put the estate in such condition that distribution may be had to those entitled to it under the will." (*Willey's Estate,* 73 Pac. 998.)

If there has been delay in the closing up and settlement of an estate, and such delay has been reasonable, the administrator will not be liable for interest; but if the delay was unreasonable, he will be charged with interest. (*Estate of Bullion,* 87 Neb. 700; note p. 351, 31 L. R. A.; *Benson* v. *Bruce,* 4 Desauss Eq. 463; *Truney* v. *Williams,* 7 Yerg. 172; *Johnson* v. *Pulner,* 1 Neb. 290; *Marshall* v. *Coleman,* 187 Ill. 556; *King* v. *Berry,* 3 N. J. Eq. 261.)

Pending litigation concerning the estate does not relieve the administrator of liability for interest for keeping the funds uninvested in his hands. (*Foster* v. *Arnold*, 60 Ga. 316; *Crouse's Estate*, 16 Pa. Super. Ct. 212.)

The good faith of the administrator in acting as he did is wholly immaterial. (Woerner on Administration, 2d ed. vol. 2, p. 688; *Austin* v. *Munro*, 47 N. Y. 360; *Lucht* v. *Behrens*, 28 Ohio St. 231.)

*Chas. B. Henderson* and *Carey Van Fleet*, for Respondent:

It was the duty of the administrator to have the assessment work done on the mining ' claims. If the administrator, in good faith, did an act which the law declares shall not be done without an order of court, if the act was one which the court would have approved or ordered done, and no injury resulted from the action, he should not be chargeable with mismanagement. of the estate. (*Estate of Millenovich*, 5 Nev. 185; *In Re Freud's Estate*, 63 Pac. 1081; *In Re Armstrong's Estate*, 58 Pac. 184.) "It is his duty to keep the property insured, and to pay the taxes thereon. He may, if the exigencies of the case demand, pay off a lien or encumbrance on the real or personal estate, and the fact that the property thereafter sells for less than the amount of the liens does not establish gross mismanagement on his part and make him answerable for the loss. (Ross, Prob. Law & Pr., vol. 1, sec. 305.)

The personal liability for interest does not exist where the delay in settlement was owing to the fact that it was difficult to ascertain or find the distributees. (*Estate of Davis*, 35 Mont. 273; Ross, Prob. Law & Pr., vol. 1, sec. 452.) It certainly was not the fault of the administrator that this estate was in litigation. The heirs certainly would not have wanted the estate distributed before they began the litigation, and certainly during the time of the litigation there was no penalty upon the administrator for not distributing the estate to them. (*In Re Sylvar's Estate*, 81 Pac. 663.)

There has been no affirmative showing at all of any

misconduct upon the part of the administrator, and there must be in order to give rise to a liability for interest. At best, the only showing has been that made by the administrator himself in regard to the payment for assessment work, and this is purely a question of judgment. If the administrator has misjudged in this particular, he has done so entirely in good faith. "So long, then, as it continued to be the duty of Wixom, the administrator, to retain this money in his custody, he had the right to deposit it for safekeeping in a bank of good standing and credit. This is exactly what prudent and judicious men ordinarily do with such of their own funds as the exigencies of their business require them to keep on hand." (*McNabb* v. *Wixom*, 7 Nev. 171.)

By the Court, MCCARRAN, C. J.:

An administrator was appointed on the 26th day of February, 1908, to take charge of and administer the estate of Patrick H. Delaney, deceased. On December 8, 1908, an inventory and appraisement was filed which set forth the property of the estate and the appraised values as follows:

| | |
|---|---|
| Certificate of deposit, Horton Banking Company | $5,000.00 |
| Cash in bank, Horton Banking Company | 1,200.00 |
| Cash received from coroner | 6.10 |
| Four lots in Battle Mountain, Nevada | 118.00 |
| One cabin, 12x14 | 250.00 |
| Four mining claims in Battle Mountain mining district, known as Delaware No. 1, No. 2, No. 3, and No. 4 | 500.00 |
| One iron bed, springs, and mattress | 12.00 |
| Two comforters and two pillows | 4.00 |
| One camp stove | 3.00 |
| Cooking utensils, three pieces | 1.00 |
| A total of | $7,094.10 |

It appears that from December, 1908, until July 1, 1915, no accounting was ever made by the administrator as to the estate or its condition. On the last-named date, pursuant to a citation duly issued by the district court, a first and final account was rendered. In this first and final accounting it appears that the administrator charges himself with cash received $6,224.45, and credits

himself with cash paid out in the total sum of $4,370.94. Of the $6,224.45 with which the administrator charges himself, $6,200.45 was in the nature of certificates of deposit and cash at the time at which the administration commenced. The sum of $24 appears to have been received in the form of rental for the cabin. In addition to this, the administrator testified at the hearing that he had on hand $100 received as additional rental for this cabin.

Objection was raised in the district court to the several items of cash paid out by the administrator from the moneys of the estate. It is from the court's rulings on these objections that appeal is taken to this court.

In the first and final accounting there appear the items of cash paid out as follows:

| | | |
|---|---|---|
| Nov. 7, 1908 | —To George W. Tripplett, assessment work on four mining claims | $400 |
| Dec., 1909 | —To George W. Tripplett, assessment work on four mining claims | 400 |
| Nov., 1910 | —To George W. Tripplett, assessment work on four mining claims | 400 |
| Dec., 1911 | —To George W. Tripplett, assessment work on four mining claims | 400 |

—making a total of $1,600 appearing as paid out by the administrator from the moneys of the estate for assessment work on the Delaware claims for the years 1908, 1909, 1910 and 1911.

It is admitted by the administrator, and in this the record is conclusive, that no order of court was ever applied for, nor was any order made or entered, authorizing, allowing, requiring, or directing the expenditure of these several sums prior to their expenditure. It is the contention of respondent that inasmuch as the four mining claims known as the Delaware No. 1, No. 2, No. 3, and No. 4 were the property of the deceased Delaney, in order to hold these mining claims for the estate it was necessary to perform the annual assessment work thereon. From the testimony of the administrator it is disclosed that after the year 1911 no assessment work was performed on these claims. In

other words they were abandoned. In justification for the performance of the assessment work and the expenditure of the moneys of the estate on these mining claims, the administrator relates of the existence of other mining property in the immediate vicinity which, being worked and developed by other parties, gave promise of presenting mineral deposits of great value; that inasmuch as the Delaney group was contiguous to this other mining property, he, as administrator, believed that the Delaney group should be protected by the performance of the annual assessment work, and thereby held for the estate. It is disclosed that no work was performed on the Delaware group after the year 1911, because development on the contiguous mining property had ceased and nothing of value had been disclosed.

Nothing appears in the record by way of justification or excuse for the failure of the administrator to secure an order of the district court allowing or directing the expenditure of these several sums of money. He was appointed administrator on the 26th day of February, 1908, and according to his own statement, as appears in the first and final accounting, the first expenditure of money for the assessment work was in December of that year. The inventory and appraisement disclosing the existence of the mining claims known as the Delaware No. 1, No. 2, No. 3, and No. 4 belonging to the estate of Patrick Delaney had been made long prior to the date on which the first expenditure for assessment work was made by the administrator. The existence of the Delaware group of mining claims as property belonging to the estate of the deceased was known to the administrator prior to the death of the deceased. We make reference to these facts because we are forced to the conclusion that there was ample time and opportunity for the administrator to have presented the matter to the district court, the properly constituted authority, and to have received from that court an order directing the expenditure of such money as it deemed necessary

for the preservation of the mining claims to the estate. And another fact appears quite significant—*i. e.*, even though it might have been reasonably necessary that the assessment work for the year 1908 should be performed upon the mining claims in order to hold them for the estate, later expenditures under the administration appear to us to have been entirely unnecessary and unwarranted, inasmuch as the condition of the estate, as disclosed by the final accounting, was such as would have warranted its being closed and the residue properly distributed to the parties entitled, long prior to the time at which it became necessary to perform the assessment work of 1909.

Aside from three claims of minor importance, amounting in the aggregate to $306.19, the estate was practically free from indebtedness. Aside from the group of mining claims and a small piece of realty in the town of Battle Mountain, and a few items of minor personal property, the estate consisted entirely of cash represented by the certificates of deposit for $5,000 and the open account of $1,200 in the Horton Banking Company in the town of Battle Mountain.

It is the contention of respondent here that good faith on the part of the administrator is all that is necessary to warrant the allowance of these several items, and that it was the duty of the administrator to see to it that the assessment work on this group of claims belonging to the estate was performed each succeeding year in order to hold the property for the estate. The learned counsel for the respondent, by way of argument in his brief, puts the matter thus:

"But what would have been said, and what bitter attack would have been made, if these claims had been abandoned by the administrator at the time he took possession of the property and Senator Kearns had been doing the assessment work on these claims alongside of the claims possessed by the estate?"

In furtherance of the contention of respondent, we are referred to a number of decisions rendered by this court dealing with matters of somewhat similar import,

and inasmuch as these decisions support the position which we take here, we deem it proper to review the same at some length. In the *Matter of the Estate of Marco Millenovich,* 5 Nev. 161, this court had occasion to pass upon the acts of an administrator where objection had been filed to his paying out certain sums of money to meet assessment levied upon mining stock belonging to the estate. At the very outset of the opinion of the court, speaking through Chief Justice Lewis, an observation is made which we deem most pertinent to the matter at bar. There it is said:

"When the law requires a thing to be done, and has not plainly marked out the manner in which it shall be performed, the executor or administrator is required to exercise not only the utmost good faith but also ordinary prudence and judgment in its execution. But when it has already pointed out a certain course to be pursued, that course must be strictly followed. * * * 'If the administrator has acted for the benefit of the estate, used proper diligence, and acted with ordinary care and circumspection in the discharge of his trust, he ought not to be held answerable for the losses which could not have been foreseen, and which ordinary precaution could not guard against.'"

Again, the court says, and here its observation is especially applicable:

"If, for example, he [the administrator] should in good faith do an act without an order of court, which the law declares shall not be done without such order, and if the act were one which the court would have approved or ordered done, and no injury has resulted from his action, he should not be chargeable with mismanagement of the estate. In every such case, however, the executor renders himself liable for any loss which may be sustained by reason of the irregularity of his proceeding."

As to the propriety of paying the assessment on valuable mining stock held in the estate and the continuation of such assessment, the court said:

"To allow valuable stock to be sold for assessments

less than its value would certainly subject an executor to the charge of misconduct. It is perhaps not his duty, nor do we think he would be justified in holding stock which is subject to assessments beyond such time as will be necessary to obtain an order of court respecting it. Property of this kind, which is only an expense to the estate, should certainly be disposed of in some way, unless it be quite evident that it would be for the interest of the estate to hold it. But in such case an executor would certainly subject himself to liability for all loss unless he acted under the direction of the court; for his primary duty, it would seem, is to obtain an order to sell such property. But an order of court, ordering him to pay all assessments, is a sufficient protection to him."

It appears that in that case the executor, before paying the assessment on the mining stock, had obtained an order of the probate court authorizing his action in this respect, and this court in reviewing the matter said:

"Had he not acted under an order of the court we should be induced to think it should not be allowed, for payment of the amount of assessments here charged would, if not paid by order of court, be unwarranted under the circumstances."

In the case of *Lucich* v. *Medin*, 3 Nev. 93, 93 Am. Dec. 376, the court, in dealing with the question of the right of the administrator to pay out the moneys of the estate for assessments on mining stock, said:

"If he held mining stock which was likely to be forfeited before he could apply to the court for instructions, he might be justified in paying something to preserve it. * * * If he held stock liable to large assessments, he should have applied to the court for leave to do one of two things: Either to sell the stock, or better still, if the estate was surely solvent, without the stock, to turn it over to the legatees, and let them sell or take their chances on speculation with it."

1. The doctrine here announced is exactly applicable to the matter at bar. The mining claims belonging to the estate were of but conjectural or speculative value.

At most they were but a prospect, the possibility of which was enhanced by the reason of the contiguity of the property to other mining prospects upon which development work was being done. An administrator, in conducting the affairs of an estate, is not required nor presumed to enter into a game of chance where the money which belongs either to the creditors or to the heirs is thrown into the gamble. Expenditures made for the purpose of preserving the estate until proper court orders may be made with reference to its disposition is one thing; hazarding the money of the estate on speculative ventures, without court order, is another. The former looks to the preservation of the property of the estate until such time as it may be properly disposed of by order of court; the latter is an unwarranted depletion of the estate. An order of court is the administrator's protection in either case.

In the *Matter of the Estate of Knight,* 12 Cal. 200, 73 Am. Dec. 531, the supreme court there laid down the doctrine that an administrator is not permitted at discretion to expend the money of the estate even for the purpose of paying off incumbrances arising upon the property, upon the theory that the property may increase in value, and thereby a speculation may be made for the estate. In that case the right of the court to direct such expenditures as might be necessary to save the estate from great sacrifice is recognized, but the act of the administrator in diverting the money of the estate without such order is declared to be one the result of which must be borne by him and for which he must be accountable.

A very interesting consideration of a matter quite similar to that presented in the case at bar is found in *Shinn's Estate,* 166 Pa. 121, 30 Atl. 1026, 1030, 45 Am. St. Rep. 656. There the money of the estate was expended in developing certain mining properties situated in a foreign jurisdiction. The property had been held by the deceased, and during his lifetime he had undertaken to develop the same. The administrator,

with a view of continuing such, expended large sums of money. The venture was a failure. The court said:

"The iron ore operation was a speculative venture which the decedent, in his lifetime, had a perfect right to enter upon; his business was to accumulate an estate. If his ventures turned out successful, he reaped the profits; if unsuccessful, no others were interested or had a right to complain. But the business of this administrator was not to make money for the state by hazardous ventures, but to save that which came into his hands, for creditors and kin, by prudent business management. Speculative ventures were not prudent business management."

In that case, as in the matter at bar, the expenditure was made by the administrator without order of court, and we find there the doctrine applied that under such circumstances such act was sufficient to establish a devastavit against the administrator, warranting a surcharge of the amount lost to the estate.

The doctrine applicable to risking assets of an estate in the continuation of the trade or business of the decedent, while not strictly applicable to the matter at bar, furnishes, nevertheless, no small degree of support for the position which we take here. The rule in that respect has been asserted to be that an administrator or executor, in the absence of authority therefor, is not permitted to use any part of the estate in trade or manufacturing or stock speculation, or other business ventures whereby the trust fund is put at hazard. (*Western Newspaper Union* v. *Thurmond,* 27 Okl. 261, 111 Pac. 204, Ann. Cas. 1912B, 727; *Mathews* v. *Sheehan,* 76 Conn. 654, 57 Atl. 694, 100 Am. St. Rep. 1017; *Campbell* v. *Faxon,* 73 Kan. 675, 85 Pac. 760, 5 L. R. A. n. s. 1002; *Kelley* v. *Kelley,* 84 Fed. 420; *Fleming* v. *Kelly,* 18 Colo. App. 23, 69 Pac. 272; *Lusk* v. *Patterson,* 2 Colo. App. 307, 30 Pac. 253; *Rose's Estate,* 80 Cal. 166, 22 Pac. 86; *In Re Smith,* 118 Cal. 462, 50 Pac. 701.)

2. The estate was held by administrator for a period

of seven years, without even so much as filing the first accounting; and it appears that the first and final account was only filed by the administrator after the issuance of an order and citation by the district court directing the same. From all that appears in the record, every claim against the estate could have been paid in cash, and every matter pertaining to the estate could have been, in compliance with statutory provision, performed and the whole estate wound up, ready for distribution, within a year, or at most a year and a half, from the date on which the administrator here was appointed.

The language of Mr. Justice Garber, in speaking for this court in the case of *McNabb* v. *Wixom,* 7 Nev. 171, and the doctrine laid down there, are especially pertinent to the matter at bar. There it was said:

"We quite agree that an administrator is bound to the exercise of care and diligence, such as prudent and judicious men ordinarily bestow upon their own important affairs; that it is his duty to settle and distribute the estate with as little delay as practicable; and that whenever he does what the law prohibits, or fails to exercise reasonable care and diligence in the endeavor to do what the law enjoins, he and his sureties are liable for the damage consequent upon such act or omission."

The respondent here relies upon the case of *Freud's Estate,* 131 Cal. 667, 63 Pac. 1080, 82 Am. St. Rep. 407, and it is contended that there the Supreme Court of California reversed its decision and overruled the doctrine as made in the case of *Knight's Case, supra.* His contention in this respect is not tenable. In the Freud case the Supreme Court of California, referring to its decision in the Knight case, said:

"Nor is the decision in *Re Knight's Estate* applicable here. In that case it was said, as is doubtless true, that while it is the duty of the administrator to preserve the estate, 'this does not mean that he is, at discretion, to pay off all incumbrances resting on the property upon the notion that the property may increase in value, and

thereby a speculation may be made by the estate; and the point directly ruled was that 'he cannot advance money to remove incumbrances unless his intestate was bound to pay the money.' Thus, apparently, the decision is placed on two grounds, namely: (1) On the ground expressed, which is in effect that the administrator cannot pay all incumbrances at discretion for speculative purposes, or, it might have been said, for any purpose except for the preservation of the property, and where necessary for that purpose; and (2) on the ground that he cannot pay off incumbrances 'unless his intestate was bound to pay the money.' "

Continuing the court says:

"But the power of the administrator to pay off incumbrances in any case results solely from the necessity of preserving the property, and can be justified only on the ground that the lien is a charge on the estate, and therefore a peril to it; and this is equally true whether the lien was created by the intestate, or, as in the case of taxes, in some other way."

It will be seen that the Supreme Court of California in the Freud case rather adhered to the doctrine laid down in the case of *In Re Knight*, but deemed the same inapplicable to the case then under consideration. In the case of *In Re Smith*, 118 Cal. 462, 50 Pac. 701, the Supreme Court of California referred approvingly to its decision laid down in *Re Moore's Estate*, 57 Cal. 437. There the court gave expression to that which is the accepted rule, namely, that the primary purpose and reason of administration of any estate are, first, to preserve the estate until distribution can be made, and, second, to pay off the debts of the decedent. In the case at bar the very nature and condition of the estate, as disclosed by the record, the fact that the estate consisted almost entirely of cash on hand, and that as against the estate there were but few and minor claims, made the whole trust one which could have been speedily discharged. The mining claims belonging to the decedent and remaining in his estate could have been made

the subject of prompt and speedy court orders, by means of which they could have been properly disposed of or turned into the hands and possession of the heirs, in which case it would have been for them to have assumed the responsibility of speculation; or, if the conditions were such as to warrant the expenditure of the moneys of the estate, the court could have properly ordered such.

Much stress is laid by the respondent on the case of *Armstrong's Estate,* 125 Cal. 603, 58 Pac. 184. In that case an administrator, finding that certain horses belonging to the estate were held by a party who claimed a lien upon them for pasturage to the amount of $93.66, redeemed the same under a compromise in which he paid out the money of the estate to the amount of $89.50, believing at the time that the horses would sell for considerably more than the amount of the lien. It developed later, however, that the amount derived from the sale was but $56.75. The court charged the administrator with the difference. The supreme court, in reviewing the question, held that the surcharge was improper, but said:

"The act might have been for the benefit of the estate, and as there is no proof of negligence or want of ordinary care, and the proof shows that the administrator acted in good faith, we must hold that if his acts could, under any state of facts, be sustained as valid, they must be presumed to be valid under such state of facts rather than be held invalid from the mere fact that the property did not sell for enough to repay the amount paid out by the administrator."

Continuing, the court said:

"We do not lay down the rule that an administrator can, of his own volition, redeem pledged personal property, or property upon which there is a valid lien, under all circumstances, and justify his acts in case of loss to the estate. If the proof should show that the property, at the time it was redeemed, was of little value, while a large amount was paid out for the purpose of

redeeming it, or if the circumstances were such that we could not say a reasonably prudent man would have done the same thing, then the circumstances might justify the charging of the loss to the administrator."

The assertion but emphasizes the position which we take here with reference to the question at bar. The property upon which the money was invested was of no fixed, definite value. It was a mining prospect, pure and simple. A large amount was paid out for the purpose of doing assessment work year after year without any effort to relieve this estate of the necessity of such expenditure, either by attempting to sell the property in the open market, under court order, or to distribute the same to the heirs of the estate; and, moreover, without any attempt on the part of the administrator to clothe himself with an order of court authorizing his acts in making such expenditures.

Respondent quotes at length from Ross on Probate Law, vol. 1, sec. 305, but the very doctrine which we apply to the case at bar is asserted in the quoted excerpt from the learned author. Speaking of the administrator, he says:

"In short, he may do whatever is necessary to the preservation of the estate intrusted to his care, subject to the contingency of the expense being disallowed by the court; but, as a rule, his duty is confined to preserving and administering the estate and turning it over to the heirs or devisees as soon as practicable, and not to speculate with it, carry on business on its account, or improve it for the benefit of distributees."

3. In an estate like that presented by the record in the case at bar, where there is cash on hand in the estate to meet outstanding claims and indebtedness, where everything is present to facilitate a speedy discharge of the trust, but where, notwithstanding this, the estate is permitted to drag on for a period of nearly seven years without any accounting, without any attempt to secure an order of court permitting the

expenditure of money, we are at a loss to know how, under such circumstances, it can be said the administrator complied with the rule fixing the duty of such officer as the same is laid down by Mr. Ross in his work on Probate Law.

"The duties of the executors," says Judge Lorigan in *Re Willey's Estate*, "are to preserve the estate, pay the indebtedness of the deceased, the charges of administration, and put the estate in such condition that distribution may be had to those entitled to it, under the will." (*In Re Willey's Estate*, 140 Cal. 238, 73 Pac. 998.)

Not only was the money of the estate forever lost to the heirs and devisees, but in addition to this the very property on which this money had been expended in the way of speculation had been by the administrator later abandoned and it, too, lost to those entitled. Such conduct, we say, fails to measure up to the rule, and fails, in our judgment, to clear the administrator of a surcharge.

We are referred to the case of *In Re Sylvar's Estate*, 1 Cal. App. 35, 81 Pac. 663. This case is especially relied upon by respondent as asserting a doctrine justifying the delay in closing up the estate. In that case we find one of the very contingencies which might justify delay in administration, namely the pendency of litigation. Indeed, we might concur in the assertion of the court there set forth:

"There are many cases in which the settlement of estates is unavoidably delayed without the fault of the administrator."

Indeed, we might join in the assertion that all presumptions are in favor of the regularity of the management of the estate by the administrator, and we would add to this by saying that when on the very face of the proceedings irregularity is made manifest, and neglect and irregularity made to be the apparent basis for loss to the estate, the presumption in favor of regularity is then overcome.

Deep-seated in the lines of our law as that law is written we find a persistent manifestation of a policy declaring for efficiency and promptness in the matter of administration of estates of persons deceased, and we might say here that this is especially true and especially to be desired where intestacy is present. Section 5963, Revised Laws, provides that every executor and administrator shall, immediately after appointment, cause notice thereof to be given. Section 5964 provides that all persons having claims against such an estate shall file proof thereof within three months after the first publication of notice. Section 5967 provides that within fifteen days after the time for filing proof of claims against an estate shall have expired, the executor or administrator shall examine and allow or disallow the claims so filed, and within five days from the time of taking such action all the claims so acted upon by the executor or administrator shall be presented to the district judge for his allowance or disallowance. Section 6041 provides that within thirty days after the district judge shall have acted upon the claims so presented to him, the executor or administrator shall file his first account. The spirit, as well as the letter of these sections last referred to, expresses the policy of our law. Expedient administration is called for by every section of the statute. Conditions may arise in the course of an administration where reasonable delays in excess of those contemplated by the statute might be tolerable or justifiable.

4. Appellants contend that the administrator should be surcharged with interest on the money of the estate held by him. The record shows that when he came into control of the estate the cash belonging thereto was represented to the extent of $5,000 by certificates of deposit bearing no interest, and approximately $1,200 was in the bank subject to check. The record suggests proceedings to establish heirship, filed in the year 1911, and decree establishing heirship entered March 16, 1915. The general rule applicable to personal liability of an administrator or executor to distributees for interest

where there has been delay in closing up the estate is that it depends entirely upon the reasonableness or unreasonableness of the delay under all the circumstances of a particular case. Nonresponsibility for interest applies where the delay was reasonable; responsibility for interest attaches where the delay was unreasonable. (11 R. C. L. p. 148, sec. 156.)

In a number of cases courts have held the pendency of suits to be sufficient cause for delaying settlement, hence sufficient cause to avert a charge of interest. (*Chase* v. *Lockerman*, 11 Gill & J. 185, 35 Am. Dec. 277; *McIntire* v. *Mower*, 204 Mass. 233, 90 N. E. 567; *Clark* v. *Knox*, 70 Ala. 607, 45 Am. Rep. 93.)

In the case of *Clark* v. *Knox, supra,* interest was deemed a proper charge against the administrator, he having held the moneys after the period of eighteen months.

In *Jacoway* v. *Hall*, 67 Ark. 340, 55 S. W. 12, interest was held a proper charge where funds were held for twenty years.

In *McDonald* v. *People*, 222 Ill. 325, 78 N. E. 609, the administrator was held chargeable with interest after the expiration of two and one-half years from his appointment, where moneys of the estate were held after that time.

In *Hall* v. *Grovier*, 25 Mich. 428, interest was held properly chargeable where the money came into the hands of the administrator about one year after his appointment and was held twenty years.

Holding to the same effect is the case of *Owens* v. *Owens*, 84 Miss. 673, 37 South. 149.

In *Brandon* v. *Hoggatt*, 32 Miss. 335, the estate was distributed after one year from the appointment of the administrator. He was charged with interest because before that time there was more than sufficient money on hand to meet the payment of debts.

In *Scott* v. *Crews*, 72 Mo. 261, the administrator sold property of the estate and accepted notes of solvent persons in payment therefor. He failed to collect notes

until compelled so to do by proceedings. Interest was held properly chargeable.

In *Re Childs*, 5 Misc. Rep. 560, 26 N. Y. Supp. 721, the administrator was held personally liable for interest, having allowed ten years to elapse. Two years was held to be a reasonable time.

Under varying circumstances and periods of time administrators have been held personally liable for interest on money held by them belonging to the estate. (*McKinney v. Nunn*, 82 Tex. 44, 17 S. W. 516; *Kenyon v. Kenyon*, 31 R. I. 270, 76 Atl. 798; *Foster v. Harris*, 10 Pa. 457; *Hasler v. Hasler*, 1 Bradf. 248.)

The case of *Pickens v. Miller*, 83 N. C. 543, as to time and conditions, is quite in point here.

The rule in England is found in the case of *Littlehales v. Gascoyne*, 2 Eng. Rul. Cas. 172, and again in *Holgate v. Haworth*, 17 Beavan's Rep. 259.

Respondent contends here that inasmuch as it required some time to establish heirship and such was not decreed until 1915, hence as administrator he should not be personally responsible for interest. Such does not appeal to us with any degree of force, in view of the circumstances presented by the record. From the very first the money was in the hands of the administrator. It was in the Horton Bank in Battle Mountain, where the administrator lived. The estate was almost free from indebtedness. There was nothing about the estate which would cause the administrator to allow the money to remain idle. We find courts dealing with the proposition under very similar conditions, and in almost every instance the administrator has been charged with interest.

In the case of *McCanse v. Goffe*, 66 Mo. App. 586, the estate was one against which there were no claims. The administrator made no settlement for a period of about five years. As a reason for delay he asserted a contention between the distributees as to a proper construction of the will, alleging that after long delay and contention with the heirs he filed a suit praying for an

interpretation of the will. It was held that even though he was justified in asking for a construction of the will, he was not justified in delaying four or five years before proceeding. He was held chargeable with interest.

In the case of *Boyd* v. *Swallows,* 59 Ill. App. 635, it was held that the administrator was chargeable with interest on the money retained for two and one-half years from the date of his appointment; this, too, notwithstanding that if any order had been made directing him to distribute the money he could not have done so because the whereabouts of some of the distributees were unknown and others were thought to be dead.

Interest was held by the court to be properly chargeable where the executor delayed the settlement of the estate for more than three years, justifying his acts by saying that the distributees were foreigners and could not be reached. (*King* v. *Berry,* 3 N. J. Eq. 261.) To the same effect is the holding in the case of *Hetfield* v. *Debaud,* 54 N. J. Eq. 371, 34 Atl. 882.

In the case of *Almy* v. *Probate Court,* 18 R. I. 612, 30 Atl. 458, the money of the estate was held by the executors for a period of three years. The court said:

"The fact that it was not made to appear at the trial that the executors knew who the persons were that were entitled to share in the money in their hands, or their places of residence, is not enough to relieve them from the payment of interest. Even if such was the fact, it was still the duty of the executors to have deposited the money where it would have earned interest for the benefit of those entitled to the money when they were ascertained."

In the case of *Doster* v. *Arnold,* 60 Ga. 316, it was held that pending litigation with reference to the estate did not relieve the administrator from liability for interest, he having kept the funds uninvested in his hands.

5. In view of the fact that this estate was administered in a judicial district consisting of two counties, where sessions of the district court may occur at such times as the judge thereof may direct, there might have

been some reasonable excuse for the failure of the administrator to secure an order of the court authorizing the expenditure of the money for the first annual assessment work after his appointment. For that reason, the administrator might be properly relieved of the surcharge for that item. As to the other items for assessment work, the absence of an order of court was without justification.

6. We deem it proper to say that where money of an estate is held by an administrator after the time when by proper accounting and other administrative acts in conformity with the statutory requirements, he could have paid out and distributed the same by court order, he should be chargeable with interest on the money thus held. This matter must, in most instances, be for the court to determine. In the case at bar we are unable to see from the record as it is before us why distribution was not made. If the money of the estate or any part thereof was held by the administrator after he could, with reasonable diligence on his part, have distributed the same pursuant to proper orders, then he is chargeable with interest on the money thus retained. As this matter must be sent back to the district court, we assume that that tribunal, in conformity with the proofs as made when the matter is again presented, will apply the rule we have here asserted.

The order appealed from is reversed, and the cause remanded.

It is so ordered.