## BENGOA Et Al. *v.* REINHART
## In Re BENGOA'S ESTATE

No. 2918

April 4, 1931.                                    297 P. 507.

*Thomas A. Brandon* and *N. J. Barry,* for Appellants:

*J. W. Dignan,* for Respondent:

## OPINION

By the Court, GUILD, District Judge:

This is an appeal from the district court of the sixth judicial district court, in and for Humboldt County, of an order settling the final account of the administrator, with the will annexed, of said estate, and denying a motion for a new trial.

Domingo Bengoa died in Humboldt County, Nevada, on October 21, 1918, and at the time of his death was a resident of said county and left estate therein. Deceased left a last will and testament nominating one Miguel Cobeaga as executor thereof, but the said Miguel Cobeaga filed his renunciation and nominated Moses Reinhart, who was, upon said nomination and the further nomination of the surviving widow, upon the 22d day of January, 1919, appointed administrator of said estate, with the will annexed. Thereafter, and on or about the 19th of February, 1919, the administrator, together

with the appraisers previously appointed, filed an inventory and appraisement of said estate, which said inventory and appraisement showed a total value of real and personal property of $94,750. The inventory and appraisement further disclosed that the estate had an undivided one-half interest in said appraised property, subject to the debts of a copartnership existing between Bengoa and Cobeaga; that the bulk of the estate consisted of (item No. 3) 9,000 head of sheep, of which 6,500 head were ewes and 2,500 head were lambs, amounting to the sum of $76,500; real property situated in the city of Winnemucca of the value of $7,500; 50 head of range cattle, $1,750; 14 head of horses and mules, $350; 3 old automobiles, $1,500; household goods and personal property, $150; 15 shares of the capital stock of the Winnemucca State Bank & Trust Company, $1,500; 300 tons of hay, $6,000; and certain interests in promissory notes, and a claim in an estate of one John Saval, deceased, all subject to the debts of the copartnership of Bengoa and Cobeaga, of which the petition for letters of administration mentions a part of said indebtedness to be approximately in the sum of $65,000, not including current bills.

From the record before us, nothing transpired in the administration of this estate from the date of filing the appraisement until the first account of the administrator was filed under order of court on or about the 18th of March, 1927. To this report and account the heirs of the decedent apparently filed their objections.

This, the first account and report of the administrator, contained, among other things, a summary of the administration and contained statements among which were the following: That, at the time of the death of the deceased, there was a copartnership existing between the deceased and Miguel Cobeaga; that the said surviving partner, since the death of the deceased, has, and at the time of the rendering of the account had, in his possession and under his control all of the partnership property; that certain claims had been filed against the estate which had been paid by Miguel

Cobeaga, as surviving partner; that on April 1, 1919, an order had been made setting aside certain exempt property to the widow of the deceased and allowing the widow $100 a month, and that these payments had been made by the surviving partner out of the partnership funds.

We assume from the record that the court had ordered an accounting to be made by the surviving partner, and at the time of the filing of the first account the same had not yet been completed, but was completed and filed before a hearing was had upon the first account. On December 10, 1927, the probate judge rendered its opinion and decision, in which it is related that the objections that had been made to the account recite in part that the account was not complete; that the administrator never demanded an accounting from the surviving partner for a period of over eight years; that the expenditures made by the surviving partner were illegal; that the partnership business was not conducted in good faith; that certain notes were given illegally and without authority; that illegal sales were made of the partnership property; and that there were certain illegal claims paid.

The trial court found: "That while it appears to the Court the length of time allowed to elapse by the administrator before taking an accounting from the surviving partner might be unreasonable, yet the Court does not feel that it can so find when considering this issue in connection with this particular hearing," and "Upon the evidence given thus far, the Court could not say but that it might have taken this length of time to settle the partnership affairs." As to the account of the administrator, "there would seem to be no reason why it should not be allowed, approved and confirmed, excepting in so far as it makes the Cobeaga account (should be accounting), a part of it." The court further found and pointed out in its decision the right of the heirs to attack the Cobeaga partnership accounting; that the administrator was evidently satisfied with the accounting, and had accepted the same, and that it was the right

of the heirs to take such action as they deemed necessary to challenge said accounting in a court of equity—but not in the probate proceedings.

Thereafter a purported final account was filed by the administrator on the 15th of December, 1928, and set forth that there had been an accounting of the partnership assets made by Miguel Cobeaga, the surviving partner, which said account showed the partnership to be insolvent, and that there were no moneys or property in his control or possession in which this estate had any interest. Further, that the legal title to certain lots in the city of Winnemucca stood of record in the name of the deceased, but that the same had been sold under execution upon judgments obtained against the partnership; that all of the money, property, and assets of the partnership have been subjected to payments of claims, demands, and judgments against the partnership, including the sale of and interest of the partnership in the real property described in the inventory, leaving only as assets of the said estate the interest of said deceased and the said estate in certain real property. The account further showed that the administrator had incurred and paid in part, and had become personally liable for the sum of $4,710, most of which was for attorneys' fees paid to various parties in connection with services rendered to the estate; that there were no assets remaining other than the interest as related in the real estate above mentioned, and the administrator prayed for an order of sale of said real estate. This account was objected to by the heirs.

The trial court rendered its decision on September 3, 1929, upon the account and the objections to the petition for order of sale. The trial court found that there was at the time of the death of the deceased a partnership existing between Bengoa and Miguel Cobeaga, and in so finding did not consider the testimony of the administrator or Cobeaga as being admissible to prove the same, but pointed out that the objections and petition, filed January 9, 1927, of Mrs. de Arrieta had recognized the existence of a partnership, and upon her motion the

court had ordered an accounting from the surviving partner. The court refused to pass upon the question of the administrator's liability, but again set forth the reasons that, if the heirs' of the deceased were not satisfied with the accounting as made, they had their remedy, and, in order to give them opportunity to avail themselves of the opportunity, refused to consider the report of the administrator as a final account, and refused to approve the same, and refused a sale as prayed for by the administrator.

Thereafter the administrator's third account, treated as a final account by the district judge, was filed on the 29th of November, 1929, and set forth practically the same facts as were set forth in the second account; namely, that there had been no funds or property come into the possession or under the control of the administrator by reason of the fact that all of the property of which the deceased died possessed of was partnership property, and that the same had remained under the control and disposition of the surviving partner; that the surviving partner had made an accounting to the administrator under order of the court, and that the accounting showed the partnership to be wholly insolvent, and that the surviving partner, Cobeaga, had no money or property in his possession or under his control, or any assets belonging to the estate; that all of the property and assets of the partnership had been subjected to the payment of claims, demands, and judgments against the partnership, including the sale under executions and judgments of all of the interests of the partnership in all of the real property described in the inventory.

There was set out against the expenses which the administrator had paid in part and had become personally liable for, consisting mostly of attorneys' fees in the sum of $4,710; and that there were no assets or property belonging to the estate, and the prayer was that the account be settled and allowed and that the administrator be discharged.

On the 19th of December, 1929, Francisco Bengoa

de Arrieta, surviving widow of Domingo Bengoa, deceased, Thomas A. Brandon, as guardian ad litem of Josephine Bengoa and Emilia Bengoa, and John de Arrieta, as guardian of the estate of Domingo Bengoa de Arrieta and Joseph Bengoa de Arrieta, minors, duly filed their objections in writing to the third (afterwards designated final) account of said administrator, and their objection to the resignation and discharge of Moses Reinhart, administrator, with the will annexed. The matter was by the court heard on the 8th of May, 1930, and on May 9, 1930, the presiding judge of said district court entered its order settling said account, designating the same as a final account, and discharging the administrator. In due course of time the objectors filed a notice of intention to move for a new trial, which was, on the 26th of June, 1930, by the court denied, and from said order the objectors have appealed.

The appellants contend: First, that there was no evidence introduced to prove a partnership between Domingo Bengoa and Miguel Cobeaga; second, that if there was a partnership it was the duty of the administrator to settle or compel a settlement of the same without unnecessary delay; and, third, that the administrator of the estate was chargeable with the appraised value thereof.

■■ First. The appellant contends that there was no evidence introduced at the hearing of the final report showing a partnership. It was not necessary to introduce such evidence at this hearing. The trial judge had long since found that there was an existing partnership between Bengoa and Cobeaga. The petition filed by the objectors asking the probate court to have an accounting of the partnership, and referred to by the trial court in its decision, is conclusive that the appellants here knew of the existence of a partnership. From the various opinions that we have quoted, and that are in the record of the probate judge, we are lead to believe that there were three or four lawsuits tried in the district court of the sixth judicial district, in Humboldt County, in which

there was at least some element bearing upon the question of partnership. In the case of Yturriaga v. Cobeaga, 47 Nev. 61, 214 P. 27, this court found, at least by implication, and recognized the existence of a partnership between Bengoa and Cobeaga, when it affirmed the findings and judgment of the trial court in an action upon a promissory note for services rendered to Cobeaga as the surviving partner in closing up the partnership business. We believe that there can be no question as to the existence of a copartnership between Bengoa and Cobeaga.

Second. As to the duty of the administrator to settle said partnership without unnecessary delay.

Third. That the administrator is chargeable and liable with the appraised value of the property. Our statutes provide:

Section 9768. "When there was a partnership existing between the testator or intestate at the time of his death and any other person, the surviving partner shall have the right to continue in possession of the effects of the partnership, and to settle its business, but the interest of the deceased shall be included in the inventory, and appraised as other property. The surviving partner shall proceed to settle the affairs of the partnership without delay, and shall account to the executor or administrator, and pay over such balance as may from time to time be payable to him in right of his testator or intestate. Upon the application of the executor or administrator the district judge may, whenever it may appear necessary, order the surviving partner to render an account, and in case of neglect or refusal may, after notice, compel it by attachment; and the executor or administrator may maintain against him any action which the deceased could have maintained."

Section 9765. "Actions for the recovery of any property, real or personal, or for the possession thereof, or to quiet title thereto, or to determine any adverse claim thereon, and all actions founded upon contracts, may be maintained by and against executors and administrators in all cases in which the same might have been

maintained by or against their respective testators or intestates."

■■ It must be conceded that upon the death of a partner the firm is dissolved unless specifically agreed in the articles of copartnership, and, yet, the community of interest may subsist for some purposes long enough to enable the survivor to wind up and settle the affairs of the partnership.

"The surviving partner not only has the right but it is his duty to liquidate the affairs of the firm. The right to liquidate is exclusive and the duty must be performed expeditiously or with reasonable diligence within a reasonable time, or without unnecessary delay and honest. Although the survivor is vested with some discretion as to how he shall proceed, it is the duty of the administrator of the deceased partner's estate to bring the matter to the court's attention if the surviving partner unnecessarily delays the settlement of the firm's affairs." In Re Grivel's Estate, 199 Cal. 351, 249 P. 184; 23 C. J. 1147.

■ The right of representatives of deceased partner is to have the firm affairs liquidated within a reasonable time and to compel the surviving partner to account therefor.

"The right of the surviving partner to wind up the firm affairs carries with it the right to continue the partnership business for such limited time and to such limited extent as is necessary in order to wind up the affairs of the firm properly and without unnecessary loss." 47 C. J. 1066, par. 650; Bancroft's Probate Practice, vol. 3, sec. 1008; In Re Auerbach's Estate, 23 Utah, 529, 65 P. 488.

■ We think the authorities are all in accord that, under a statute similar to ours, the court has power to compel an accounting, and it was the duty of the surviving partner to wind up the affairs of the partnership existing between Bengoa and Cobeaga at as early a date as possible. In the case of Yturriaga v. Cobeaga, 47 Nev. 61, 214 P. 27, 29, this court had the following to say concerning this matter: "At the time of the death of Bengoa, the partnership was indebted to the

extent of many thousands of dollars, and while it was the duty of the surviving partner to close up the business of the partnership without delay, what constitutes delay is a question of fact in a particular case. A surviving partner is allowed some latitude in the exercise of his discretion in such matters. As was said by the supreme court of Kansas in Big Four Imp. Co. v. Keyser, 99 Kan. 8, 161 P. 592, L. R. A. 1917c 166: 'The surviving partner is vested with some discretion as to the manner of closing the business and the time to be taken for that purpose. He may continue the business long enough to close it up without sacrificing the assets and long enough to make an advantageous disposition of the stock.' If the defendant has unduly delayed closing the partnership, the administrator of Bengoa, who was also president of the bank which was the main creditor of the partnership, could have taken steps to compel a speedy closing up thereof. There is no suggestion of delay on the part of the surviving partner in closing up the affairs of the partnership by any one."

There may be extenuating circumstances that we know nothing of. The record before us, as admitted, does not contain any of the records of the proceedings had in the partnership accounting of Bengoa and Cobeaga.

The probate judge is presumed to have had before him all of the facts and circumstances connected with the entire administration proceeding. He correctly pointed out in his decision upon the objections to the first account of the administrator the right of the parties interested to except to said accounting and to go thoroughly into the matter is an equitable proceeding separate from the administration proceeding.

As above pointed out, the trial court was satisfied that no unreasonable delay had occurred on the part of the administrator in demanding an accounting from the surviving partner. He was in possession of all the facts and circumstances. No one interested had in the eight years previous made any intimation of delay, so far as the record shows.

■ We are of the opinion that the matter in its entirety being before the probate judge, and he having

exercised his discretionary power, after hearing all the evidence, in refusing to find any undue or unreasonable delay, his finding should be undisturbed.

■ Third. Is the administrator chargeable and liable with the appraised value? The trial court's viewpoint was that, the administrator having accepted the partnership accounting, which under the law he had a right to do, it was then a matter for the heirs or parties interested who thought there was unfairness or fraud in the partnership accounting to pursue or follow the matter through a court of equity. The trial court was correct.

The trial court, in its decision of August 30, 1929, upon the hearing of a purported final account filed December 15, 1928, again pointed out to the parties their right to pursue the matter of the partnership accounting in an equitable proceeding, and refused to entertain the report of the administrator as a final report until such time as the partnership accounting had been settled by the court.

So far as we are able to discover in the record before us, neither the heirs nor any other party interested have seen fit to have the partnership accounting set aside, nor have they disputed the same before the trial court in a proper action, although frequently told they might do so by the judge sitting in probate.

The appellants state in their brief: "We are not asking for an account of the partnership * * * but we ask this Court to determine incidentally whether or not in fact there was a partnership, and if there was, as Reinhart has taken no steps to settle with the surviving partner or secure possession of the property, we hold that he should be personally liable for what reasonably could have been obtained for the partnership property had he made an attempt to settle it."

True, the inventory and appraisement fixes a value of the estate of some $94,750, but it also relates that the entire property is partnership property, subject to an indebtedness of some $65,000, not including current bills.

Mr. Reinhart testified, on the hearing of the third account, that the copartnership was insolvent as early as 1919, or soon after his appointment as administrator.

He also testified that half of the sheep were lost in 1921; further, that many actions of law had been instituted against the copartnership, and in some he had been joined party defendant as administrator. None of this testimony was disputed, nor was any testimony offered in support of any of the objections of the heirs.

It is a matter of common knowledge that the sheep industry was in a hazardous condition throughout the entire country during the early years following the World War, and that it has not yet fully recovered and is still in a very precarious condition.

Under such circumstances, can it be said that the administrator did not exercise due care, or that he should be charged with the appraised value of an estate not any of which ever came into his possession?

"An administrator is not liable for losses when he acts in good faith and exercises ordinary prudence." In Re Pedroli's Estate, 47 Nev. 322, 221 P. 244.

We are not prepared to say that the administrator, under the facts and circumstances before us in the record, is at this time chargeable with the appraised value of this estate. The administrator reported to the court and gave evidence that the partnership was insolvent as early as 1919, or shortly after he was appointed. Under the order of the court the surviving partner filed his accounting. It was the right and duty of the heirs, if they were not satisfied with this accounting, and as was pointed out by the trial court, to take exceptions to the same and to pursue their remedy further in a court of equity.

No evidence was offered so far as is in the record before us upon the part of the heirs or any other person challenging or denying the testimony of the administrator as to the insolvency of the copartnership.

From that part of the reported testimony of Mr. Reinhart, given at the hearing of the third account, it would appear that the court had considerable evidence before it, both upon direct and cross examination, as to the status of the copartnership between Bengoa and Cobeaga at the beginning of the administration, and there is some enlightenment as to the insolvency of the copartnership

and what became of the estate. Transcript, page 27.

"Q. Well, Mr. Reinhart, did you ever tell him (Cobeaga) that you wanted him to sell? A. I do not know whether I did or not.

"Q. You mean by that— A. I can't recall that, but I don't think there ever was a time that it would have been good policy to sell.

"Q. Well, why not? A. Well, the thing wasn't solvent, that is why.

"Q. Not in 1919? A. I do not know whether it was or not. I don't remember any time that it was.

"Q. And isn't it true, Mr. Reinhart, that if the property had been sold in 1919 that it would have paid all the debts and left money besides for the price sheep were then bringing? A. I do not know whether it would or not."

Cross-examination:

"Mr. Reinhart, isn't it true that right after 1919, the winter of 1920, that bunch of sheep got caught on the desert and lost about half of them? (On cross-examination the year was changed to 1921.) A. I think it is true.

"Q. And that following, or about the same time, the United States Government assessed you for income tax one hundred five thousand, no eighty odd thousand, and following that up, in 1921 the prices of sheep, in '21 and '22 went down to practically nothing, didn't they? A. Yes.

"Q. And any of those years if they had sold them off they wouldn't paid ten cents on the dollar, the obligations, would they? A. I do not know that. They wouldn't paid twenty-five cents anyway."

The income tax controversy, according to the testimony, was not concluded until some time in 1925, then afterwards a gentleman named Scott sued the partnership for some seventeen or eighteen thousand dollars, and this was not concluded for a couple of years. Several other suits were brought against the partnership and the administrator was made a party defendant.

Under our Revised Laws of 1912, secs. 5963, 5964, 5967, 6041 (Nevada Compiled Laws 1929, secs. 9706,

9707, 9710, 9784), the duties of the administrator of an estate are clearly set forth, and, as was said by this court in Re Delaney's Estate, 41 Nev. 384, 171 P. 383, L. R. A. 1918D, 1022, expedient administration is required.

"Every executor and administrator shall be chargeable in his account with the whole of the estate of the deceased which should come to his possession at the value of the appraisement contained in the inventory, except as hereinafter provided, and with all the interest, profit and income of the estate." Section 9778, 1929 Compiled Laws.

"He shall not make profit by the increase nor suffer loss by the decrease or destruction of any part of the estate without his fault. He shall account for the excess when he shall sell any part of the estate for more than the appraisement, and if any be sold for less than the appraisement he shall not be responsible for the loss if the sale has been justly made." Section 9779, 1929 Compiled Laws.

At the conclusion of the hearing of the objections to the third account, the trial court, among other things, said: "This matter has been going on three or four years before me. I had many hearings. The administrator seems to be satisfied with this accounting as filed by the surviving partner, and the heirs seem not inclined to take any action to test whether the account is proper or not, and the Court cannot see that any advantage is being gained by carrying this on from time to time and hearing accounts when there is no money coming into the hands of the administrator."

The administration of an estate of a deceased person is a sacred trust, and one imposing upon the party appointed by the court grave and responsible duties, especially when the rights of minor heirs and surviving widows are at stake. But in this case we feel that they were ably represented by counsel, and at no time during the eight years did they raise their voice or ask the court to compel an accounting — until 1927 — then when the accounting had been made and filed they made no effort (even though importuned by the probate judge to do so)

to take any exceptions to the same or pursue the same further by testing its validity or truthfulness in an equitable proceeding.

There is nothing in the record before us to substantiate the position of the objectors or appellants.

In many cases cited us by the objectors in their brief, we do not find any of them analogous to the situation here. We are in strict accordance and sympathy with the long line of decisions in our own state with reference to the duties, responsibilities, and trust reposed in administrators of estates of deceased persons. In the matter now before us, there is no evidence of any neglect of duty upon the part of the administrator Reinhart. Can it be said that his failure to file a written account and report over a period of eight years from and after the date of his appointment is sufficient of itself to fasten upon the administrator the charge of fraud or to make him accountable for the difference in the inventoried value of the estate, less the indebtedness listed at the time of his appointment and in the inventory, when his explanation for delay and the insolvency of the estate are not refuted by any evidence? We think not. So far as the record before us is concerned, the estate was insolvent shortly after his appointment as administrator. If the objectors have offered any proof or testimony to the contrary, it is not before us. Under all of the circumstances, as we review the proceedings, the testimony and the record, the order allowing and approving the account and report, and discharging the administrator, as made and entered in the lower court, should be affirmed.

It is so ordered.

DUCKER, J., being unable to participate because of illness, the Governor designated Hon. CLARK J. GUILD, Judge of the First Judicial District Court, to sit in his place and stead.